Submitted September 30, 2009, affirmed February 17, petition for review denied June 11, 2010 (348 Or 414)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# BRYAN TIMMOTHY BAKER,
*Defendant-Appellant.*

Deschutes County Circuit Court
05FE0977MS; A132245

226 P3d 125

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, and David C. Degner, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Breithaupt, Judge pro tempore.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Defendant appeals a judgment that imposed a sentence of 180 months in prison for his convictions on five counts of second-degree sexual abuse, ORS 163.425, and five counts of incest, ORS 163.525. He argues that the sentence is unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution. We review to determine whether the punishment is so disproportionate to the offense that it would shock the moral sense of reasonable people. *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009). We affirm.

The relevant facts are not in dispute. The victim is defendant's biological daughter. Defendant met the victim for the first time when she was 16 years old. At that time, the victim moved into defendant's home where she lived with defendant and his wife. After she moved in, defendant had sexual intercourse with the victim on multiple occasions when she was 17 and 18 years old. The sexual relationship persisted even after defendant was confronted by police officers who were investigating the relationship. As a result of the relationship, the victim became pregnant and had defendant's child. Defendant had previously had sexual intercourse with an underage female that had resulted in a pregnancy.

After defendant was indicted on 21 counts of second-degree sexual abuse and 54 counts of incest, he entered into a plea agreement with the state. In accordance with that agreement, defendant pleaded guilty to five counts of second-degree sexual abuse and five counts of incest. Defendant stipulated that each count was a separate and distinct act that could be sentenced consecutively.

The trial court accepted defendant's plea and sentenced defendant to a total of 180 months in prison. On the five counts of sexual abuse, the court imposed five consecutive 36-month presumptive terms of incarceration. The court also imposed a six-month prison sentence on each count of incest, to run concurrently with the sentences on the sexual abuse convictions. The trial court found four aggravating factors to impose the six-month departure sentence on the incest charges.

■　　　On appeal, defendant assigns error to his sentence of 180-months' incarceration, which he argues is unconstitutionally disproportionate under Article I, section 16. The issue in this case is whether the sentence that the trial court imposed is "so disproportionately severe that it constitutes one of those 'rare circumstances' that requires reversal under Article I, section 16." *Rodriguez/Buck*, 347 Or at 58. To determine whether the sentence is unconstitutionally disproportionate, we ask whether the sentence would "shock the moral sense" of reasonable people when the sentence is compared with the offense. *Id.*

　　　Defendant argues that the sentence imposed in this case is disproportionate, because it is longer than the minimum sentence for other, more serious crimes. As an example, defendant contends that the 180-month total sentence for "consensual" sex with his daughter when she was 17 and 18 years old is disproportionate "because the minimum sentence for robbery or rape in the first degree is 100 months in prison." The state argues that defendant understates the severity of his conduct by describing the sex as consensual, because a 17-year-old cannot consent to sexual contact. ORS 163.315(1)(a). Moreover, the state argues that defendant incorrectly compares his sentence on 10 convictions against the minimum sentence on a single conviction of rape. Thus, according to the state, it would be better to compare defendant's 180-month sentence on his 10 separate convictions to 10 separate convictions for rape, which would carry a mandatory minimum sentence of 1,000 months in prison. ORS 137.700(2)(a)(J).

■　　　A sentence can be constitutionally disproportionate if a greater crime could yield a lesser sentence than the sentence for a lesser crime. *State v. Shumway*, 291 Or 153, 164, 630 P2d 796 (1981). In *Shumway*, the defendant was convicted of intentional murder and sentenced to life in prison with the possibility of parole after 25 years. However, the sentence on a conviction of aggravated intentional murder would have been life in prison with the possibility of parole either 15 or 20 years after sentencing, depending on the aggravating factors. *Id.* Because intentional murder was a lesser crime but the defendant received a greater sentence than he would have received if convicted on aggravated

intentional murder, the court held that the defendant's sentence violated Article I, section 16. *Id.* Similarly, in *Cannon v. Gladden*, 203 Or 629, 632-33, 281 P2d 233 (1955), the court held that the petitioner's sentence of life in prison for assault with intent to commit rape violated Article I, section 16, because the sentence for forcible or statutory rape was 20 years.

■ This case is obviously distinct from *Shumway* and *Gladden*. Defendant stipulated that each conviction resulted from a separate and distinct act. Thus, the proper comparison is between defendant's sentences for one charge of second-degree sexual abuse and the sentence for one charge of rape. Defendant was sentenced to a 36-month term of incarceration for each sexual abuse charge. Each of those sentences is substantially shorter than the 100-month mandatory minimum sentence for rape.

We next consider how the Supreme Court's recent opinion in *Rodriguez/Buck* affects the outcome in this case. In *Rodriguez/Buck*, the court consolidated two cases in which the defendants were convicted of first-degree sexual abuse. The state assigned error to the trial courts' impositions of sentences of 16- and 17-month terms of incarceration, when Measure 11 required a mandatory minimum sentence of 75 months in prison for first-degree sexual abuse. *Id.* at 52. Rodriguez had briefly caused the back of the victim's head to be in contact with Rodriguez's clothed breasts; Buck had allowed the back of his hand to remain when the victim leaned her clothed buttocks against it several times; later, Buck wiped dirt off of the back of the victim's shorts with two swipes of his hand. *Id.* at 70. In determining that the sentences were constitutionally disproportionate, the Supreme Court considered three nonexclusive factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* at 58.

Under the first factor, the court compared the "gravity" of the offenses committed by the defendants with the severity of the penalties imposed. *Id.* at 59, 67. The offense includes both the statutory definition of the offense and the

defendants' conduct in committing the offense. *Id.* at 69 (noting that "Measure 11 imposes the *same, mandatory* prison term for a 50-year-old man forcing a 13-year-old girl to engage in prolonged skin-to-skin genital contact with him and a 19-year-old forcing the same 13-year-old to touch his clothed buttock for five seconds" (emphasis in original)).

Under the *Rodriguez/Buck* analysis, we consider the relationship between the penalty and offense to determine whether the penalty is proportional to the offense. *See State v. Shaw*, 233 Or App 427, 432, 225 P3d 855 (2010) ("Although the legislature's prescribed statutory penalty establishes the severity of the crime to a point, courts nonetheless have an independent duty to consider whether specific sentences [are proportioned to the offense]."). In *Rodriguez/Buck*, the court explained that courts can view the offense through the lens of the harm caused to society or the victim: "The absolute magnitude of the crime may be relevant. Stealing a million dollars is viewed as more serious than stealing a hundred dollars." 347 Or at 63 (quoting *Solem v. Helm*, 463 US 277, 292-93, 103 S Ct 3001, 77 L Ed 2d 637 (1983)). The *Rodriguez/Buck* court concluded that, "[n]ot only does defendants' criminal conduct appear insufficiently grave to justify the mandatory [75-month] sentence, but it also is less severe than the conduct in the vast majority of * * * other reported first-degree sexual abuse cases[.]" *Id.* at 74.

The court then turned to the second factor, under which the court compared the penalty imposed with the penalties for related offenses. *Id.* at 63. "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." *Id.* Applying that factor, the court noted in *Rodriguez/Buck* that the mandatory minimum sentence for the defendants' clothed touching of the children at issue was the same as the mandatory minimum sentence for second-degree sodomy, second-degree rape, and second-degree sexual penetration. It concluded that reasonable people would not believe that the defendants' sentences were proportioned to the defendants' offenses in light of the other, substantially more egregious conduct that was subject to the same mandatory minimum sentence. *Id.* at 75-76.

Finally, under the third factor, the court considered the defendants' criminal histories. Under that factor, a repeat offender's sentence might be proportional to the offense even if that sentence would be constitutionally disproportional as applied to a first-time offender. *Shaw*, 233 Or App at 433-34, 438-39. In *Rodriguez/Buck*, the court noted that the defendants had no prior convictions and that their conduct was qualitatively different from the conduct of defendants in other first-degree sexual abuse cases. 347 Or at 78. "In the more common first-degree sexual abuse cases," the court explained, "the contact is not only far more physically invasive and sexually charged, but it has occurred multiple times, rather than only once." *Id.*

Application of *Rodriguez/Buck* to this case supports our conclusion that defendant's sentence comports with Article I, section 16. We start by identifying the offense and penalty, and we then compare the two. *Rodriguez/Buck* involved first-degree sexual abuse, an offense that encompasses a wide range of conduct, and the defendants' conduct, while criminal, was substantially less egregious than other conduct that also constituted first-degree sexual abuse. Here, unlike in *Rodriguez/Buck*, defendant's offenses involved multiple instances of sexual intercourse with his minor child over a long period of time. That conduct overlaps with the majority of the conduct described in the statute prohibiting second-degree sexual abuse. Second-degree sexual abuse occurs when the defendant has sexual intercourse with an individual who is unable to consent to a sexual act due to age, a mental defect, mental incapacity, or physical helplessness. ORS 163.315. Moreover, in *Rodriguez/Buck*, the court concluded that the defendants' conduct was not as egregious as other conduct that could result in a conviction for first-degree sexual abuse. Here, in light of the conduct underlying the charges, we are unable to reach such a conclusion. *Cf. Shaw*, 233 Or App at 437 (offense of first-degree rape involved specific conduct). Defendant's conduct—engaging in sexual intercourse with his child beginning when she was a minor— is egregious. Thus, consideration of the first factor—the offenses that defendant committed and the penalty imposed—suggests that defendant's sentence is indeed proportionate to his crime.

We turn to the second factor, a comparison of the penalties for related offenses. While it may be proper to compare second-degree sexual abuse and rape charges to determine whether the sentence is proportionate under that factor, we are mindful that "our role is not to reorganize the criminal code in a hierarchy of offenses." *Shaw*, 233 Or App at 437. Here, defendant improperly asks us to compare the sentence for 10 convictions for two separate crimes (sexual abuse and incest) to one conviction for a single crime (rape). The flaw in that argument is self evident: sentences resulting from multiple convictions are not properly compared with one sentence resulting from a single conviction.

Analysis of the third factor, defendant's criminal history, also requires a different result than in *Rodriguez/Buck*. In *Rodriguez/Buck*, the court explained that, in sex abuse cases, the general rule is that sex abuse perpetrators repeatedly abuse their victims, but it noted that the defendants' conduct did not follow that general pattern. 347 Or at 78. Unfortunately, this case follows the general rule. Defendant admitted that he had sexual intercourse with his minor daughter on five separate occasions and continued that relationship after his daughter reached the age of majority. Defendant's conduct persisted even after the police alerted him that they were investigating the sexual relationship. Moreover, defendant has a history of second-degree sexual abuse apart from this relationship: He has previously impregnated another minor female. This is not a rare case where the penalty imposed violates Article I, section 16. The trial court did not err.

Affirmed.