Argued and submitted September 9, 2014, reversed February 4, petition for review denied July 9, 2015 (357 Or 550)

GERMAN REYES REAL,
*Petitioner-Respondent,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Appellant.*

Malheur County Circuit Court
12039302P; A153065

344 P3d 33

Leigh A. Salmon, Senior Assistant Attorney General, argued the cause for appellant. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Clayton Lance argued the cause for respondent. On the brief was Larry R. Roloff.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

In this collateral criminal proceeding, the post-conviction court concluded that petitioner was denied adequate assistance of counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution because petitioner's trial counsel did not argue that a 20-year sentence of imprisonment for petitioner's convictions of attempted aggravated murder and attempted assault was disproportionate under Article I, section 16, of the Oregon Constitution.[1] Defendant—the Superintendent of Snake River Correctional Institution (superintendent)—appeals, arguing that the performance of petitioner's trial counsel was not prejudicially deficient. We conclude that petitioner suffered no prejudice from the asserted deficiency of his trial counsel because, even if trial counsel had made the disproportionality challenge that petitioner contends should have been made, and even if that challenge had been evaluated under analysis like that applied in *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009), the challenge would have failed. Accordingly, we reverse.

The underlying facts are as follows. Petitioner, along with other members of a gang, was in a car that pursued another car that they believed carried members of a rival gang. Petitioner testified in the criminal trial that, while the cars were in motion, he believed he saw that one of the occupants of the other car had a gun. When the rival car came to a stop, petitioner did not tell the driver of his car to continue driving, nor did he object when one of his companions told their driver to cut the other car off. Instead, once their car came to a stop, petitioner, using a semiautomatic rifle at close range, opened fire on the other car. He fired seven shots, which passed through the front window of the victims' car. There were six people in that car: two in the front seat and four in the backseat. One of the backseat passengers may have been nicked in the arm by a bullet; otherwise, petitioner's bullets inflicted no injuries.

---

[1] Article I, section 16, provides, in part, that "all penalties shall be proportioned to the offense."

Petitioner was charged with six counts of attempted aggravated murder, one count for each victim.[2] A jury convicted him of attempted aggravated murder as to two of the victims in the backseat and of the lesser-included offense of attempted third-degree assault as to the other four victims. For each of the two attempted aggravated murder convictions, the trial court imposed the 120-month term of incarceration required by ORS 137.700(2)(a)(B), one of the mandatory minimum sentences adopted by Ballot Measure 11 (1994), and ordered those terms to run consecutively. The court also imposed a one-year imprisonment sentence on each count of attempted assault, to run concurrently with the sentences on the attempted aggravated murder convictions. On direct appeal, we affirmed without opinion. *State v. Reyes-Real*, 244 Or App 137, 257 P3d 1021 (2011).

Petitioner then initiated this post-conviction relief proceeding. Petitioner asserted that his trial counsel's performance had been prejudicially deficient in two particulars, namely that counsel had failed to raise two challenges that would have been successful. First, he claimed that his trial counsel performed inadequately by not asserting, as a basis for a motion for judgment of acquittal (MJOA), that the state had produced no evidence that would have allowed the jury to conclude that he possessed the specific mental intent for attempted aggravated murder. He argued that "[d]efendant's intent[,] or lack thereof, would have to be the same for all the occupants of the vehicle unless there were specific examples in the record from which the jury could conclude the Defendant had singled out the particular individuals in the front and back seat with specific intent to kill each of them." In particular, petitioner contended that no reasonable juror could conclude that "the evidence in the case exhibited a[n] individualized and specific intent by the Defendant [in relation to] the two (2) individuals in the back seat for which he was convicted."

---

[2] Each count alleged that petitioner intentionally attempted to cause the death of a victim and intentionally attempted to cause the death of an additional person in the course of the same criminal episode. *See* ORS 163.095(1)(d) (aggravated murder is murder, as defined in ORS 163.115, if there was more than one murder victim in the same criminal episode); ORS 163.115(1)(a) (murder is criminal homicide committed intentionally).

Second, he claimed that his trial counsel performed inadequately by failing to object to "the criminal penalty of twenty (20) years in prison" as disproportionate under the Supreme Court's disproportionality analysis in *Rodriguez/Buck*. In particular, petitioner contended that his trial counsel should have argued that it "would shock the moral sense of reasonable people * * * that the exact same conduct resulted in two huge and highly divergent sentences * * *." Petitioner contended that, in an as-applied disproportionality analysis, a court "should consider the facts of an individual's specific conduct rather than the nature of the crime and conviction thereof." Here, in petitioner's view, his "conduct" was "the firing of the rifle" and that same conduct resulted in convictions for both attempted third-degree assault and attempted aggravated murder—a result that, he contended, is constitutionally disproportionate. Petitioner argued, "The penalty for these [attempted aggravated murder] convictions creates a disparity of ten (10) times that of the other [attempted assault convictions] as it relates to each count of conviction." Petitioner contended that, given the other aspects and circumstances of petitioner's conduct—which he described as firing a rifle without aiming at particular individuals, believing his life was in danger, thinking that his victims were armed, and not causing any injury—and his lack of criminal history, his sentence for the attempted aggravated murder convictions was constitutionally disproportionate.

The post-conviction court denied relief on the MJOA claim but granted relief on the disproportionality claim, based on these findings and conclusions:

"1.  The jury verdict in this case is totally inexplicable.

"2.  J[udgment] of a[cquittal] at close of state's case would not have been granted. 7 shots at close range into the windshield of a car w/ 6 people is enough in the light most favorable to the state.

"3.  Jury found diff[erent] v[ictim]s on 2 cases [counts?] w/ consec[utive] sent[ences], so no need for other findings.

"4.  No one was injured, but that was pure luck. Just as easily, 6 people could have died.

"5.  *Rodriguez/Buck* was decided after this trial and was a change in the prior interpretations of M[easure] 11. But the

Oregon and federal constitutions were still relevant to sentences. In general, reasonable people would not be shocked at 120 mo[nth sentences] for the conduct, but would be shocked that 2 c[ount]s could carry a M[easure] 11 sentence and 4 could carry only a misd[emeanor] sentence. Trial att[orney] did not cite any constitutional provisions so that issue was not preserved. Due to the verdict, this argument became especially important. It was inadequate not to raise it and it also meant it could not be appealed. The pet[ititoner] was prejudiced."

That is, the post-conviction court concluded that an MJOA based on lack of evidence that petitioner acted with the requisite intent for aggravated murder—*i.e.*, the intent to kill more than one person—would have failed. Because there was enough evidence to go to the jury on all six attempted aggravated murder counts, an MJOA on that basis would have failed, and, accordingly, petitioner suffered no prejudice from his trial counsel's failure to make such a motion.[3] On the other hand, the post-conviction court concluded that petitioner's trial counsel was deficient in failing to raise a constitutional disproportionality challenge to petitioner's sentence and that that failure prejudiced petitioner. As to prejudice, the post-conviction court reasoned that a disproportionality challenge would have prevailed because, although "reasonable people would not be shocked at 120 mo[nth sentences] for the conduct, [they] would be shocked that 2 c[ount]s could carry a M[easure] 11 sentence and 4 could carry only a misd[emeanor] sentence."

We disagree with the post-conviction court because, even if it was deficient for petitioner's trial counsel not to

---

[3] Petitioner does not cross-assign error to the denial of his claim of inadequate assistance based on the MJOA. He does, however, continue to contend that the jury's verdict was "inconsistent" because there was not sufficient evidence to allow the jury to come to a different conclusion about his intent *vis-à-vis* different victims. In particular, he suggests that the only possible explanation for the verdict is that the jury found him guilty of attempted aggravated murder as to the two Caucasian victims and of attempted assault as to the four Hispanic victims. The state, for its part, suggests that there was evidence that the trajectory of the bullets fired by petitioner focused on the former two victims and that the only victim injured was one of those for whom defendant was convicted of attempted aggravated murder. That factual issue is beyond the scope of this opinion. We assume, as we must, that the jury determined that petitioner acted with the required intent to support convictions for attempted aggravated murder for two of the victims and for attempted assault for the other four victims.

raise a constitutional disproportionality challenge,[4] petitioner did not suffer prejudice as a result. Petitioner asserts that trial counsel should have raised an argument based on analysis similar to that announced by the Supreme Court in *Rodriguez/Buck*. However, as we will explain, even if trial counsel had made a disproportionality challenge and a court had evaluated it under the *Rodriguez/Buck* analysis, the challenge would have failed. Given that such a challenge would have failed, there is no likelihood that raising it would have affected the result, and petitioner suffered no prejudice from the lack of a disproportionality challenge.

To prevail on a post-conviction claim of inadequate assistance of trial counsel under Article I, section 11, a petitioner has the burden of showing, by a preponderance of the evidence, (1) deficient performance (*i.e.*, that trial counsel failed to exercise reasonable professional skill and judgment based on the law at the time trial counsel acted) that resulted in (2) prejudice to the petitioner (*i.e.*, that trial counsel's deficient performance had a tendency to affect the result of the petitioner's prosecution). *Chase v. Blacketter*, 221 Or App 92, 96, 188 P3d 427, *rev den*, 345 Or 381 (2008). Under the Sixth Amendment, a petitioner must make a functionally equivalent showing. *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). Specifically, petitioner must show that trial counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for

---

[4] We express no opinion about whether, as the post-conviction court concluded, it was deficient at the time of petitioner's sentencing—over a year before the Supreme Court decided *Rodriguez/Buck*—for counsel not to raise a disproportionality challenge along the lines of the analysis in that case, in particular because that meant that the issue could not be raised on appeal. *See Peters v. Belleque*, 241 Or App 701, 711, 250 P3d 456, *rev den*, 350 Or 571 (2011) (we need not reach the question of deficient performance unless asserted deficiency prejudiced the petitioner). *But see Chase v. Blacketter*, 221 Or App 92, 101, 188 P3d 427, *rev den*, 345 Or 381 (2008) (where, at the time of sentencing, there was lack of authority for the argument urged on post-conviction review, trial counsel did not perform deficiently in not raising such an argument; because counsel in a different case accurately anticipated extension of the law does not mean that any lawyer exercising reasonable skill would have done so); *Krieg v. Belleque*, 221 Or App 36, 41, 188 P3d 413, *rev den*, 345 Or 317 (2008) (given the developing state of the law at the time, neither trial counsel nor appellate counsel performed deficiently in not challenging the petitioner's sentence because the predicate facts had not been submitted to a jury and proved beyond a reasonable doubt).

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 688, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

Lack of prejudice is dispositive in this case. Whether a petitioner has demonstrated prejudice is a legal question that may depend on the post-conviction court's predicate factual findings. *Wyatt v. Czerniak*, 223 Or App 307, 311, 195 P3d 912 (2008). Where, as in this case, the claim is based on trial counsel's failure to raise a disproportionality challenge, whether the petitioner suffered prejudice depends on whether the challenge would have been successful, a legal question. *See Logan v. State of Oregon*, 259 Or App 319, 327, 313 P3d 1128 (2013), *rev den*, 355 Or 142 (2014) (whether the petitioner suffered prejudice depended on whether objection to the admission of evidence would have been well taken); *Peters v. Belleque*, 241 Or App 701, 711, 250 P3d 456, *rev den*, 350 Or 571 (2011) (whether the petitioner suffered prejudice depended upon whether the petitioner was entitled, as a matter of law, to conviction of a lesser crime); *Gordon v. Hall*, 232 Or App 174, 184, 221 P3d 763 (2009) (whether the petitioner suffered prejudice depended upon whether argument that he should not be subjected to an enhanced life sentence would have prevailed); *see also Kimmelman v. Morrison*, 477 US 365, 375, 106 S Ct 2574, 91 L Ed 2d 305 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the *defendant also must prove that his Fourth Amendment claim is meritorious* and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." (Emphasis added.)). Accordingly, we consider whether a disproportionality challenge to petitioner's sentence would have been successful.

As noted, under Article I, section 16, "all penalties shall be proportioned to the offense." Article I, section 16, requires that the penalty imposed on a criminal defendant be proportioned to the specific offense for which the defendant was convicted, or, in other words, that the sentence bear the appropriate comparative relation to the gravity of that offense. *State v. Wheeler*, 343 Or 652, 667, 175 P3d 438 (2007). Courts evaluate the proportionality of a penalty by

considering whether the imposition of the sentence would shock the moral sense of reasonable people. *Id.* at 668.

In *Rodriguez/Buck*, the Supreme Court reviewed its disproportionality jurisprudence and identified several factors that bear on consideration of the relationship between the sentence and the offense. In *Rodriguez/Buck*, the court consolidated two cases in which the defendants had been convicted of first-degree sexual abuse. The state assigned error to the trial courts' imposition of sentences of 16- and 17-month terms of incarceration, when Measure 11 required a mandatory minimum sentence of 75 months in prison for first-degree sexual abuse. 347 Or at 52. Rodriguez had briefly caused the back of the victim's head to be in contact with Rodriguez's clothed breasts. Buck had allowed the back of his hand to remain when the victim leaned her clothed buttocks against it several times; later, Buck wiped dirt off of the back of the victim's shorts with two swipes of his hand. *Id.* at 70. In determining that the sentences were disproportionate under Article I, section 16, the Supreme Court considered three nonexclusive factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* at 58.

Under the first factor, the court compared the severity of the penalty imposed with the "gravity" of each defendant's offense. *Id.* at 59, 67. The primary determinant of the severity of the penalty is the amount of time the offender must spend in prison or jail. *Id.* at 60. The gravity of the offense requires consideration of both the statutory definition of the offense—including the range of conduct prohibited by the statute—and the particular defendant's conduct in committing the offense—including where on the range of prohibited conduct the defendant's offense falls. *Id.* at 68-69. The court noted:

> "An as-applied proportionality analysis that considers the facts of an individual defendant's specific criminal conduct is particularly significant when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct. In such a case, a harsh penalty might not, on its face, be disproportionate,

because of the fact that the statute dealt, *inter alia,* with some extreme form of that conduct. However, when a defendant is convicted for engaging in only more minor conduct encompassed within the statute, the defendant may plausibly argue that the mandatory sentence, as applied to the particular facts of his or her case, is unconstitutionally disproportionate."

*Id.* at 61. In making this "range of activity" assessment,

"a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim."

*Id.* at 62. As to the defendants in that case, the *Rodriguez/Buck* court concluded that, "[n]ot only does defendants' criminal conduct appear insufficiently grave to justify the mandatory [75-month] sentence, but it also is less severe than the conduct in the vast majority of * * * other reported first-degree sexual abuse cases[.]" *Id.* at 74.

The court then turned to the second factor, under which the court compared the penalty imposed with the penalties for other, related crimes. *Id.* at 63. "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." *Id.* Applying that factor, the court noted in *Rodriguez/Buck* that the mandatory minimum sentence for the defendants' clothed touching of the children at issue was the same as the mandatory minimum sentence for second-degree sodomy, second-degree rape, and second-degree sexual penetration. It concluded that reasonable people would not believe that the defendants' sentences were proportioned to the defendants' offenses in light of the other, substantially more egregious conduct that was subject to the same mandatory minimum sentence. *Id.* at 75-76.

Finally, under the third factor, the court considered the defendants' criminal histories. *Id.* at 77. The court noted that the defendants had no prior convictions and that their conduct was qualitatively different from the conduct of defendants in other first-degree sexual abuse cases. *Id.* at

78. "In the more common first-degree sexual abuse cases," the court explained, "the contact is not only far more physically invasive and sexually charged, but it has occurred multiple times, rather than only once." *Id.*

After examining all three of those factors, and concluding that each indicated that the defendants' sentences were disproportionate, the Supreme Court concluded that the sentences in those cases violated Article I, section 16. *Id.* at 80.

The superintendent contends that petitioner's sentence is not disproportionate to his offenses under *Rodriguez/Buck*, while petitioner contends that it is. We agree with the superintendent.

First, to the extent that petitioner suggests that his 240-month aggregate sentence is unconstitutional, we reject that suggestion and, instead, examine the disproportionality of each of the 120-month sentences for the attempted aggravated murder convictions. The constitution requires that each penalty be "proportioned to the offense." *See State v. Parker*, 259 Or App 547, 549, 314 P3d 980 (2013), *rev den*, 355 Or 380 (2014) (declining to apply disproportionality analysis to 119-month aggregate sentence for 10 counts of first-degree encouraging child abuse); *State v. Baker*, 233 Or App 536, 543, 226 P3d 125, *rev den*, 348 Or 414 (2010) (declining to apply disproportionality analysis to aggregate sentence of 180 months for five counts of second-degree sexual abuse and five counts of incest).[5]

To apply the first *Rodriguez/Buck* factor—a comparison of the severity of the penalty and the gravity of the

---

[5] In support of his argument to consider the disproportionality of a cumulative sentence for more than one crime, petitioner relies on *State v. Ross*, 55 Or 450, 104 P 596 (1909), *modified on reh'g*, 106 P 1022 (1910). In that case, the defendant was convicted of larceny and sentenced to five years' imprisonment and a fine of $576,853.74. And, if the fine were unpaid, the defendant was sentenced to one day in jail for every two dollars of the fine. *Id.* at 474. The Supreme Court, observing that the final part of the sentence was, in effect, a sentence of imprisonment for life for nonpayment of the fine, held that it was unconstitutionally cruel and unusual, and reversed that part of the sentence. *Id.* On rehearing, the court went further, and concluded that the fine itself was constitutionally cruel and unusual, and reversed it. *Id.* at 480. *Ross* involves, then, whether all or parts of a sentence for a single crime were unconstitutionally cruel and unusual, not whether aggregate sentences for more than one crime were disproportionate.

offense—we compare a 120-month term of incarceration with the actual offense of attempted aggravated murder under the circumstances of this case as compared to other types of activities that could constitute that crime. That is, we consider whether shooting a firearm multiple times at more than one person intending to kill them is less grave or consequential than other forms of attempted aggravated murder.

Petitioner first argues that the imposition of a 10-year sentence and a one-year sentence for the same conduct demonstrates that the 10-year sentence is disproportionate. Petitioner suggests that we "should consider the facts of an individual['s] specific conduct *rather than* the nature of the crime and conviction thereof. In this particular case, the conduct to be considered is the firing of the rifle." (Emphasis added.) But, again, petitioner's argument is incorrect factually and immaterial legally. Petitioner was convicted of attempted aggravated murder for intentional conduct towards two of the victims for the firing of the rifle *with the intent to take more than one human life*, ORS 163.095(1)(d) (aggravated murder is murder, as defined in ORS 163.115, if there was more than one murder victim in the same criminal episode); ORS 163.115(1)(a) (murder is criminal homicide committed intentionally); ORS 163.005(1) (criminal homicide is causing the death of another human being), as compared with his conviction for attempted third-degree assault for different conduct toward the other victims. ORS 163.165(1)(a) (assault in the third degree includes conduct that "[r]ecklessly causes serious physical injury to another by means of a deadly or dangerous weapon"); ORS 161.085(9) ("recklessly" means "a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists"). Accordingly, petitioner is incorrect when he asserts that "the exact same conduct resulted in two * * * highly divergent sentences," that is, that he was convicted of and sentenced for both attempted aggravated murder and attempted third-degree assault for the same conduct. More importantly, as noted, whether the sanction for attempted assault is less than that for attempted aggravated murder is immaterial to the analysis of whether petitioner's actual conduct in

committing attempted aggravated murder is more or less grave than other possible attempts to commit that crime.

We turn, then, to that analysis. Petitioner suggests that attempted murder includes a range of conduct. He observes that murder as defined in ORS 163.115(1)(a) prohibits a range of conduct, some of which conduct—because it is premeditated—could reasonably be considered to be more grave than other conduct—because it is an immediate response to a perceived threat. Petitioner contends that an aggravated murder that involved "planning, plotting, conspiring" would reasonably be viewed as more grave than a situation like his, in which the perpetrator believes that the victims are armed and his own life is in danger. Thus, in petitioner's view, his conduct is among the less grave types of conduct to be considered attempted aggravated murder, indicating that his sentence is disproportionate. Petitioner also emphasizes that, here, there was little if any actual physical harm to the victims—at most, one of the victim was grazed in the arm by a bullet. Thus, petitioner also suggests that his sentence is disproportionate in light of the actual harm inflicted.

The superintendent responds that the pertinent statutes proscribe very specific conduct, not the kind of broad range of conduct that concerned the Supreme Court in *Rodriguez/Buck*. He also contends that petitioner's conduct was particularly egregious and was, in fact, premeditated, outweighing the lack of physical injury to the victims.

To recapitulate, petitioner and members of his gang pursued a car that they believed was occupied by rival gang members. Assuming that petitioner actually believed he saw that one of the victims had a gun, he did not tell the driver of his car to keep driving when the victims' car stopped. Instead, once his car had pinned the other car in place, he immediately opened fire at close range with a semiautomatic weapon on the people in the other car. At sentencing, the trial court characterized petitioner's actions as "c[oming] to the fight." Moreover, the court observed that "it is a miracle, nothing to do with you, that people weren't killed." Even if we accept petitioner's argument that attempted aggravated murder as defined by statute may include a broad range of

conduct, we disagree that his particular conduct was relatively benign. Petitioner and his companions pursued the other car, he did nothing to avoid a confrontation with the occupants of the other car, and, even if he saw a gun in the other car, he did not see anyone attempt to use it. Although things happened quickly after the vehicles stopped, petitioner decided to open fire on a car occupied by six people. He fired at close range using a semiautomatic weapon with the intent to kill more than one of them. His failure to seriously injure anyone was simply fortuitous and does not make his conduct more benign. The gravity of petitioner's conduct seems sufficient to justify a 10-year sentence under the first *Rodriguez/Buck* factor.

We turn to the second *Rodriguez/Buck* factor—comparison of the penalty imposed with the penalties for related crimes. In *Rodriguez/Buck*, the Supreme Court observed that, if more serious related crimes carry a less severe penalty than the instant offense, that might indicate that the penalty for the instant offense is disproportionate. 347 Or at 63. Petitioner suggests that more serious crimes that result in loss of life carry shorter sentences than attempted aggravated murder, indicating that his sentence is disproportionate. In particular, he points to sentences for second-degree manslaughter (75 months; ORS 137.700(2)(a)(E)) and criminally negligent homicide (as low as 16 to 18 months; ORS 163.145; OAR 213-0017(3)). The superintendent responds that petitioner draws a false comparison, and we agree.

A person who commits second-degree manslaughter acts with an awareness of a substantial risk that death will result from his or her actions. ORS 163.125(1)(a);[6] ORS 161.085(9). By contrast, a person who commits attempted aggravated murder acts with the intent to cause death, and does so in particularly egregious circumstances—here, with the intent to cause the death of more than one person. It does not shock the moral sense that the legislature determined

---

[6] Second-degree manslaughter also encompasses intentionally causing or aiding another person to commit suicide. ORS 163.125(1)(b). There, although the perpetrator acts intentionally, the life-taking actions are committed by another person. Again, it is reasonable to view that as a less serious crime than intentionally taking a substantial step toward killing someone.

that intending to cause death in such circumstances, and failing, constitutes a more serious offense that is to be punished more severely than acting recklessly toward possible death, and causing it. That is even more true for criminally negligent homicide. *See* ORS 161.085(10) (defining criminal negligence as failing to be aware of a substantial risk).

Finally, we address the third *Rodriguez/Buck* factor. As in *Rodriguez/Buck*, petitioner here has no criminal history. As we observed in *State v. Shaw*, 233 Or App 427, 438-39, 225 P3d 855, *rev den*, 348 Or 415 (2010), although criminal history may, along with other factors, demonstrate disproportionality, "the lack of prior convictions alone has never been sufficient to render an otherwise constitutional penalty disproportionate under Article I, section 16."

For those reasons, even if trial counsel had raised the disproportionality argument that petitioner contends should have been raised, and even if the trial court had considered it under an analysis like that in *Rodriguez/Buck*, the argument would have failed. Accordingly, petitioner has not established that any deficient performance by his trial counsel prejudiced him, and the post-conviction court erred in concluding otherwise.

Reversed.