Submitted January 9, 2018; affirmed September 2; on appellant's petition for reconsideration filed September 23, 2020, reconsideration allowed by opinion February 3, 2021

See 309 Or App 136, ___ P3d ___ (2021)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JEREMY LANCE HORNER,
*Defendant-Appellant.*

Lane County Circuit Court
201204868; A162293

474 P3d 394

Charles D. Carlson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

PER CURIAM

Affirmed.

DeHoog, P. J., concurring.

## PER CURIAM

Defendant stole a truck, sped away when spotted by a police officer, drove the wrong way on a highway while being pursued, eventually drove the truck into two parked minivans, and ran away on foot. *State v. Horner*, 272 Or App 355, 358-59, 356 P3d 111 (2015), *rev den*, 358 Or 794 (2016). After defendant was caught, police discovered stolen property in the truck. *Id*. at 359. Defendant was convicted of 26 crimes, including first-degree burglary and felon in possession of a firearm, and he received a decades-long prison sentence. In defendant's initial appeal, we rejected defendant's challenges to his convictions. *Id*. at 358. However, we remanded for resentencing, for reasons not pertinent here. *Id*. at 371.

At resentencing, the trial court ordered defendant to serve a term of incarceration on each of the 26 counts of which he had been convicted, some to run consecutively and some to run concurrently. The trial court ruled that many of the felony sentences were subject to ORS 137.717, Oregon's repeat property offender statute (defendant has numerous previous convictions), and the court found substantial and compelling reasons to impose durational departures on many of the sentences. In the end, the aggregate sentence on the 26 counts included a total of 342 months of incarceration.

On appeal from resentencing, defendant contends that his sentence is unconstitutional. Specifically, he challenges the aggregate 342-month term as unconstitutionally disproportionate under both Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. In addition, defendant contends that the sentences on some of the individual counts are unconstitutionally disproportionate. We reject defendant's Eighth Amendment argument without discussion. We do the same with respect to defendant's Article I, section 16, challenges to sentences on individual counts.

We briefly address defendant's Article I, section 16, challenge to his 342-month aggregate sentence. As defendant acknowledges, in *State v. Parker*, 259 Or App 547, 549, 314 P3d 980 (2013), *rev den*, 355 Or 380 (2014), we deemed it "not appropriate" to consider the defendant's disproportionality challenge to an aggregate sentence. And, subsequently,

we declined to address a post-conviction petitioner's contention that a lengthy aggregate sentence was unconstitutional, relying on *Parker* and noting that Article I, section 16, "requires that each penalty be 'proportioned to the offense.'" *Real v. Nooth*, 268 Or App 747, 756, 344 P3d 33, *rev den*, 357 Or 550 (2015). We understand *Parker* and *Real* to hold, albeit with little published analysis, that disproportionality challenges with respect to aggregate sentences imposed on convictions for multiple counts are not cognizable under Article I, section 16. Although defendant contends that *Parker* was wrongly decided, he has not attempted to establish that it is *plainly* wrong, our standard for reversing precedent. *State v. Doyle*, 298 Or App 712, 720, 450 P3d 29 (2019). We note, again, that the question remains open in the Supreme Court. *See State v. Carey-Martin*, 293 Or App 611, 621, 430 P3d 98 (2018) (so noting). However, under *Parker* and *Real*, we affirm.

Affirmed.

**DeHoog, P. J.,** concurring.

As the majority opinion suggests, defendant's convictions in this case resulted largely from his commission of an unremarkable property crime—unauthorized use of a vehicle—followed by an ill-advised and criminally dangerous attempt to avoid being arrested the next morning after an officer saw defendant leaving a restaurant in the truck he had stolen. 306 Or App at 403. The theft of that truck, it turns out, was itself part of a series of property offenses committed the night before, in which defendant or an accomplice had broken into two vehicles, stolen their contents, broken into a garage using a remote taken from one of the vehicles, and carted off the fruits of those crimes in a third vehicle—the stolen truck that defendant used in his attempt to elude the police. During the night, defendant had also used a $100 Walmart gift card taken from the burglarized garage to buy cigarettes, socks, and t-shirts. For those offenses, the trial court sentenced defendant to serve nearly 30 years in prison.[1]

---

[1] Defendant received a sentence of 342 months, or 28 and one-half years. Included in that sentence was a consecutive 18-month term for being a felon in possession of a firearm, which resulted from defendant's possession of a handgun he had happened to find in the stolen truck.

Of the 26 convictions arising from that course of conduct, the most serious under the applicable sentencing provisions was defendant's first-degree burglary conviction, for which he might lawfully have received a sentence of as little as 36 months under the repeat property offender (RPO) statute, ORS 137.717.[2] Furthermore, nothing in the applicable laws *required* the trial court to impose departure sentences on any other offense, nor was there anything to preclude the court from making each of defendant's individual sentences concurrent with every other sentence. As a result, defendant's *total* sentence for the entire criminal episode could have been as short as 36 months; instead, for what some might view as a series of comparatively minor property and driving-related crimes in which, fortunately, no one was physically harmed, defendant received a sentence of nearly 10 times that duration. Moreover, given the majority opinion's conclusion that defendant cannot challenge that aggregate sentence on proportionality grounds, *see* 306 Or App at 403-04, it appears that he would have been similarly without recourse had the trial court imposed virtually all of defendant's sentences consecutively, in which case he would have been required to serve an additional 15 years in custody, with a total period of incarceration of almost 15 times the minimum required sentence.[3]

In writing separately in this case, I do not mean to suggest that I would view defendant's conduct as relatively inconsequential if I were sentencing him, or that I necessarily conclude that the sentence imposed on him violated the proportionality requirement of Article I, section 16, of the Oregon Constitution. Nor do I have any material

---

[2] Under the sentencing guidelines, defendant's first-degree burglary conviction was categorized a 7-C, which carries a presumptive prison sentence of not more than 24 months. However, sentencing defendant under the RPO statute, ORS 137.717, and finding grounds for an upward departure given defendant's probation status and persistent involvement in crime, the trial court imposed a 72-month prison term for defendant's unlawful entry into a garage to steal property.

[3] In the course of fleeing the police, defendant drove the wrong way on a highway and off-ramp, causing several other drivers to pull off the roadway to avoid potential head-on collisions; defendant also endangered several other motorists and at least one pedestrian with the manner and speed of his driving. As a result of the resulting driving convictions and several misdemeanor property offenses, the trial court imposed an additional 15 years' incarceration, but it made that time concurrent with defendant's 342-month prison term.

disagreement with the manner in which the majority opinion characterizes defendant's arguments or our precedent regarding the Article I, section 16, proportionality analysis. Finally, I agree that defendant has not made a persuasive argument that, under our Article I, section 16, case law, he may, in fact, challenge his aggregate sentence on proportionality grounds or that, if he cannot, then our case law is plainly wrong.

Instead of challenging those aspects of the majority opinion, I write to express two concerns. First, notwithstanding the manner in which we—as opposed to the Supreme Court—have expressly declined to consider the proportionality of aggregate sentences, I do not necessarily agree that the *only* way to read our own cases is as holding that such an analysis is *prohibited*. Second, to the extent that our case law does establish such a prohibition, the rather uncritical manner in which that rule developed should serve to remind us all of the key role that careful reasoning and the accurate characterization of our precedent must play in the development of our case law.

Because it is central to the majority's conclusion, I begin with a close examination of *State v. Parker*, 259 Or App 547, 314 P3d 980 (2013), *rev den*, 355 Or 380 (2014). In that case, the defendant appealed his sentence for 10 counts of first-degree encouraging child sexual abuse (ECSA), contending that the sentence was constitutionally disproportionate under Article I, section 16. *Id.* at 548-49. Defendant's convictions had followed an investigation in which hundreds of still and video images of child pornography were found on his computer; that discovery led to his indictment on 10 counts of ECSA, to which he later pleaded guilty. *Id.* at 548. On the first four counts, the trial court sentenced the defendant to prison terms of 16, 27, 35, and 41 months, which were to run consecutively. *Id.* On each of the remaining six counts, the defendant received a sentence of 45 months, to run concurrently with all other counts. His total sentence, therefore, was 119 months in prison. *Id.*

On appeal, the defendant assigned error to the sentence imposed on each count of ECSA and to the aggregate sentence for all 10 counts, arguing that, individually

and cumulatively, his sentences were disproportionate. *Id.* at 549. As to the defendant's challenge to his aggregate sentence—which we quickly rejected—we first noted that the defendant had not "provid[ed], nor [were] we aware of, any authority *requiring* a proportionality analysis with regard to a defendant's aggregate sentence." *Id.* (observing that, in the Supreme Court's leading opinion on proportionality, *State v. Rodriguez/Buck*, 347 Or 46, 49, 217 P3d 659 (2009), the court addressed proportionality as to "each defendant's [single] conviction for first-degree sexual abuse") (emphasis added). We then compared the defendant's sentence to the sentence challenged in *State v. Baker*, 233 Or App 536, 538, 226 P3d 125, *rev den*, 348 Or 414 (2010). *Id.*

Our discussion of *Baker* in *Parker* would be telling if we were writing on a blank slate. As we explained in *Parker*, the defendant in *Baker* had challenged a 180-month aggregate sentence, which comprised five consecutive 36-month prison terms for five counts of second-degree sexual abuse and five concurrent six-month terms for incest. *Id.* In challenging the proportionality of that sentence, the defendant had compared his 180-month aggregate sentence for 10 offenses to the mandatory minimum 100-month sentence for a *single* first-degree rape conviction. *See Parker*, 259 Or App at 549. In *Parker*, we explained that we had rejected that challenge in *Baker* because "the proper comparison for the defendant's sentence is between the defendant's sentences for *one* charge of second-degree sexual abuse and the sentence for *one* charge of rape." *Id.* (internal quotation marks and brackets omitted; emphases in *Parker*). And, as we further explained, properly considered, "the [*Baker*] defendant's sentences were *each* 'substantially shorter than the 100-month mandatory minimum sentence for rape.'" *Id.* (quoting *Baker*, 233 Or App at 540 (emphasis in *Parker*)).

Due to what we perceived to be a similarity between the argument that the *Parker* defendant made on appeal and the argument that we had previously rejected in *Baker*, we concluded that it was "not appropriate to consider defendant's aggregate or cumulative sentence of 119 months to determine if his aggregate or cumulative sentence of 119 months is disproportionate to his 10 offenses." *Parker*, 259 Or

App at 549. Despite that seeming *non sequitur* in *Parker*—inexplicably equating a comparison between an aggregate sentence and the sentence for a single offense with an assessment of an aggregate sentence in light of the 10 offenses for which it was imposed—one *could* view the foregoing conclusion as a holding that Article I, section 16, does not permit, much less require, an examination of whether an aggregate sentence is proportionate. However, the rationale that we gave for our conclusion in *Parker* could also be read to suggest a far more limited holding than that. As we explained,

> "Defendant asks us to compare an aggregate sentence for multiple criminal convictions *to a single sentence for a single criminal conviction* and to determine that the penalty imposed for all his offenses is disproportionately severe. As we *alluded* to in *Baker*, that framework is simply untenable. The penalties imposed for defendant's conduct, indeed, must be proportioned to the gravity of his offenses. However, we cannot compare an aggregate sentence for 10 counts of first-degree encouraging child sex abuse to the maximum sentence for *a single related crime*."

*Id*. at 550 (emphases added).

In light of that explanation, *Parker* might reasonably be viewed as simply confirming the principle stated in *Baker*, namely, that one cannot challenge an aggregate sentence as disproportionate on the grounds that it exceeds the allowable sentence for any particular single offense. That is, because the defendant in *Parker*—like the defendant in *Baker*—"ask[ed] us to compare an aggregate sentence for multiple criminal convictions to a single sentence for a single criminal conviction and to determine that the penalty imposed for all his offenses is disproportionately severe," he asked us to make the wrong comparison, and, for *that* reason, *Baker* required us to reject his challenge. *Parker*, 259 Or App at 550.

Still, *Parker* does not explicitly limit its holding to the circumstances present in *Baker*. Rather, *Parker* somewhat inescapably says that it is "not appropriate to consider defendant's aggregate or cumulative sentence of 119 months to determine if his aggregate or cumulative sentence of 119 months is disproportionate to his 10 offenses." *Id*. at 549.

That, as defendant seems to acknowledge, at least *sounds* like a definitive holding that a defendant cannot challenge an aggregate sentence on proportionality grounds, whether by comparing it to a sentence applicable to a single offense, or by some other means. As the majority opinion reflects, the above language from *Parker* can be reduced to a conclusion that it was "not appropriate to consider [the] defendant's aggregate or cumulative sentence of 119 months to determine if *** [it] is disproportionate." *Id.* at 549; *see* 306 Or App at 407 (describing defendant's acknowledgment that, in *Parker*, "we deemed it 'not appropriate' to consider the defendant's disproportionality challenge to an aggregate sentence").

Moreover, as the majority also notes, our decision in *Real v. Nooth*, 268 Or App 747, 344 P3d 33, *rev den*, 357 Or 550 (2015), further solidified that understanding of our statement in *Parker*. In *Real*, the petitioner in a post-conviction proceeding alleged that he had received inadequate assistance of counsel when his trial attorney failed to challenge on proportionality grounds the petitioner's 20-year prison term for two counts of attempted aggravated murder. 268 Or App at 749-50. The post-conviction court agreed. *Id.* at 748. On appeal, we reversed, concluding that the petitioner had not established that any inadequacy in trial counsel's performance had prejudiced the petitioner. *Id.* at 751-52. We explained that, "Article I, section 16, requires that the penalty imposed on a criminal defendant be proportioned to the specific offense for which the defendant was convicted, or, in other words, that the sentence bear the appropriate comparative relation to the gravity of that offense." *Id.* at 753 (citing *State v. Wheeler*, 343 Or 652, 667, 175 P3d 438 (2007)). As relevant here, we summarily rejected one implicit premise of the petitioner's prejudice argument, as follows:

"First, to the extent that petitioner suggests that his 240-month aggregate sentence is unconstitutional, we reject that suggestion and, instead, examine the disproportionality of each of the 120-month sentences for the attempted aggravated murder convictions. The constitution requires that each penalty be 'proportioned to the offense.' *See State v. Parker* *** (declining to apply disproportionality analysis to 119-month aggregate sentence for 10 counts

of first-degree encouraging child [sexual] abuse); *State v. Baker* \* \* \* (declining to apply disproportionality analysis to aggregate sentence of 180 months for five counts of second-degree sexual abuse and five counts of incest)."

*Real*, 268 Or App at 756 (footnote omitted). In light of that understanding, we proceeded to compare, for proportionality purposes, each 120-month term of incarceration with the underlying, individual offense of attempted aggravated murder. *Id*. at 757. We did not, however, provide any further explanation for our conclusion that we could only consider proportionality at the level of individual offenses, without considering whether, taken as a whole, the petitioner's aggregate sentence may have been disproportionate.

As with *Parker*, reasonable minds could differ as to whether *Real*'s statement about aggregate sentences should be viewed as a holding in that case. We explained in *Real* that the petitioner had argued that the "penalty for these [attempted aggravated murder] convictions creates a disparity of ten \* \* \* times that of the other [attempted assault convictions] as it relates to each count of conviction." *Id*. at 750 (brackets in original). The relevant comparison there was between the petitioner's 120-month sentence for attempted murder and his 12-month sentence for attempted assault arising out of the same conduct; it is not clear whether he ever argued that his total sentence of 20 years was disproportionate under the circumstances. Thus, it is also far from clear that there was any reason for us to decide in that case whether we could countenance such a challenge. If not, our statement about aggregate sentences can only be viewed as *dictum*.

The majority opinion, of course, concludes that *Parker* and *Real*, either individually or collectively, hold that a defendant cannot challenge an aggregate sentence as disproportionate under Article I, section 16. 306 Or App at 403-04. And, even though defendant does not expressly concede that those opinions reach that holding—he instead acknowledges that we rejected such a challenge in *Parker* and says that, "[t]o the extent that [*Parker*'s] statement constitutes" such a holding, it was "wrongly decided"—he neither argues that we did *not* reach the holding that the

majority opinion says we did, nor, as the majority points out, does he undertake the task of persuading us that those decisions are *plainly* wrong. Under the circumstances, it is not appropriate for us to make such arguments for him, and, for those reasons, I concur with the majority opinion.

What matters most to me for purposes of this concurrence is how the rule that the majority now relies on developed over the course of our decisions in *Baker*, *Parker*, and *Real*. As the majority opinion acknowledges, that rule emerged with "little published analysis." 306 Or App at 404. *Parker*'s rationale is set out above and, as indicated, seems to have relied entirely on a mistaken understanding that, because we said in *Baker* that the defendant could not challenge *his* aggregate sentence in the manner that he tried to—by comparing it to the sentence he might have received for a single offense—it followed that no defendant could challenge *any* aggregate sentence on proportionality grounds. We did not explain in *Parker* how, exactly, that conclusion followed, nor did we point to any aspect of Article I, section 16, its history, its construction by other states having comparable provisions, or anything else, to support such a conclusion.

A closer examination of *Real* reveals no further support for that conclusion. In its entirety, that aspect of the opinion merely states that it rejects any suggestion that the defendant's aggregate sentence is unconstitutionally disproportionate, because "[t]he constitution requires that each penalty be 'proportioned to the offense.'" *Real*, 268 Or App at 756 (citing, without further discussion, *Parker* and *Baker* as each "declining to apply disproportionality analysis"). Thus, in *Real*, we essentially accepted the matter as settled, even though we had never really addressed whether in fact that was the rule or why.

It may well be that, were we to follows our typical approach to construing constitutional provisions, we would ultimately reach the same conclusion that we did in *Parker*, *Real*, and now the majority opinion in this case; after all, the starting point for that analysis would be the text of Article I, section 16, which refers to "*the* offense" in the singular. Or

Const, Art I, § 16 (emphasis added).[4] As things stand, how-
ever, we now have a settled and apparently binding rule of
law whose basis is largely unknown, whose consequences
may be extraordinary, and which, under our principles of
*stare decisis*, cannot be set aside unless it is shown to be
"plainly wrong," a task made all the more difficult by the
absence of any explanation for the rule in the first place.
In allowing a rule of constitutional law—or, for that mat-
ter, any rule having the potential to have significant con-
sequences for any number people who may come before the
court—to develop in such an unconsidered manner does a
disservice to the law, to the public, and to the court itself.
For those reasons, I respectfully concur.

---

[4] That conclusion, however, is not inevitable. *See, e.g.*, *Farris v. State*, 753
NE2d 641, 648 (Ind 2001) (considering, under constitutional provision substan-
tially similar to Article I, section 16, of the Oregon Constitution, whether the
defendant's aggregate sentence was proportionate to his "offense" of killing one
person and wounding three others); *Commonwealth v. LaPlante*, 482 Mass 399,
403, 123 NE3d 759 (2019) (rejecting argument, under constitutional prohibition
against cruel and unusual punishments, that a sentence was lawfully propor-
tional so long as each part of sentence did not exceed statutory maximum for the
sentenced offense).