Submitted September 29, 2009, affirmed January 27, petition for review denied June 11, 2010 (348 Or 415)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# DONALD CLAYTON SHAW,
*Defendant-Appellant.*

Coos County Circuit Court
06CR1416; A136011

225 P3d 855

Peter Gartlan, Chief Defender, and Robin A. Jones, Senior Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent. On the supplemental answering brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Robert M. Atkinson, Senior Assistant Attorney General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge,* and Edmonds, Senior Judge.

EDMONDS, S. J.

---

\* Brewer, C. J., *vice* Deits, S. J.

## EDMONDS, S. J.

Defendant was convicted of first-degree rape, ORS 163.375(1)(b), and first-degree sexual abuse, ORS 163.427(1)(a)(A), of an 11-year-old girl. Those convictions carried with them certain mandatory sentences under ORS 137.700: Defendant received a sentence of 25 years' imprisonment and lifetime post-prison supervision on the rape conviction, and a concurrent sentence of 75 months' imprisonment on the sexual abuse conviction. On appeal, he challenges only the constitutionality of his sentence for first-degree rape, which he contends is disproportionate to his crime and constitutes cruel and unusual punishment under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. We affirm.

Defendant was charged with raping and sexually abusing an 11-year-old girl. The victim testified that defendant walked with her to a secluded area, where he then pulled up her skirt, pulled down her underwear, pushed her against a bank, and held her hands above her head. She told him to stop, but he forced his penis into her vagina. Defendant denied that he had ever met the victim and denied raping or abusing her.

The jury found defendant guilty on both charges. Under ORS 163.375(1)(b), sexual intercourse with a "victim [ ] under 12 years of age" is first-degree rape, a Class A felony. ORS 163.375(2). Rape committed against a child younger than 12 years of age carries a mandatory minimum sentence of 25 years' imprisonment, ORS 137.700(2)(b)(D), plus a term of lifetime post-prison supervision, including 10 years of "active tracking" by an electronic device attached to the person. ORS 144.103(2)(a).[1]

---

[1] ORS 144.103(2) provides:

"(a) A person sentenced to a term of imprisonment for violating one of the offenses listed in paragraph (b) of this subsection shall serve a term of post-prison supervision that continues for the rest of the person's life if the person was at least 18 years of age at the time the person committed the crime.

"(b) The offenses to which paragraph (a) of this subsection applies are:

"(A) ORS 163.375(1)(b);

"* * * * *

■    On appeal, defendant does not challenge the sufficiency of the evidence that he raped the victim. Rather, he contends that the imposition of a 25-year sentence and lifetime post-prison supervision for that offense is "greater even than the presumptive sentence that he would have received had he committed a murder"; in his view, as applied to the circumstances of this case—namely, that he had no prior criminal record and was amenable to treatment—such a sentence is disproportionate to his crime and amounts to cruel and unusual punishment under the state and federal constitutions.

We begin with defendant's arguments under Article I, section 16, of the Oregon Constitution. That section provides, in part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." Or Const, Art I, § 16. The constitutional question posed by defendant is whether, as applied to him, the statutory penalty that was imposed in this case—25 years' imprisonment and lifetime post-prison supervision with 10 years of active tracking—is unconstitutionally disproportionate to the offense that he committed. The short answer to that question is no. Regardless of defendant's criminal history or likelihood of reoffending, the 25-year sentence that defendant received for a crime as heinous as the forcible rape of a child under 12 does not present one of the "rare circumstances" in which a disproportionate punishment requires reversal by this court under Article I, section 16. *State v. Wheeler*, 343 Or 652, 670, 175 P3d 438 (2007). In light of the Supreme Court's recent decision in *State v. Rodriguez/Buck*, 347 Or 46, 57, 217 P3d 659 (2009), however, it is necessary to offer a fuller explanation of why the sentence in this case does not "shock the moral sense" of reasonable people.

■■    In *Rodriguez/Buck*, the Supreme Court considered whether mandatory 75-month sentences for first-degree sexual abuse in two consolidated cases violated the proportionality requirement of Article I, section 16. The court prefaced

"(c) When a person is sentenced to a term of post-prison supervision described in paragraph (a) of this subsection, the person must be actively supervised for at least the first 10 years of the post-prison supervision and actively tracked for the remainder of the term. Active tracking may be done by means of an electronic device attached to the person."

its analysis by cautioning that "[i]t is not the role of this court to second-guess the legislature's determination of the penalty or range of penalties for a crime." 347 Or at 58. The court also reaffirmed that the traditional test of proportionality—*i.e.*, whether imposition of the prescribed sentence would "shock the moral sense" of reasonable people—remains the touchstone of the analysis. *Id.* However, the court further developed that test by examining and then applying "three factors that bear upon that ultimate conclusion: (1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.*

■  In examining the first factor, the court elaborated "on the way in which a court should examine the severity of the penalty, the gravity of the offense, and the relationship between the two." *Id.* at 60. The court explained that "the primary determinant of the severity of a penalty is the amount of time that the wrongdoer must spend in prison or jail, if convicted of that offense." *Id.* Identifying the relevant "offense" is somewhat more involved:

> "Certainly, 'offense,' for purposes of the proportionality requirement, *includes* the statutory definition of the crime, but the ordinary definition of the word 'offense' also includes the specific conduct of the defendant that (because it was within the statutory definition) led to the prosecution and conviction of that defendant. We therefore conclude that a defendant's 'offense,' for purposes of Article I, section 16, is the specific defendant's particular conduct toward the victim that constituted the crime, as well as the general definition of the crime in the statute. In considering a defendant's claim that a penalty is constitutionally disproportionate as applied to that defendant, then, a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim."

*Id.* at 61-62 (footnote omitted; emphasis in original).

Once the relevant "penalty" and "offense" have been identified, the court explained, the next step in the analysis is

to determine whether the former is "proportioned" to the latter. Reiterating its previous statement in *Wheeler*, the court observed that "the use of the word 'proportioned' strongly implies 'that a greater or more severe penalty should be imposed for a greater or more severe offense, and conversely, that a less severe penalty should be imposed for a less severe offense.' " 347 Or at 62 (quoting *Wheeler*, 343 Or at 656). Although the legislature's prescribed statutory penalty establishes the severity of the crime to a point, courts nonetheless have an independent duty to consider whether specific sentences imposed pursuant to statute are consistent with the proportionality requirement in Article I, section 16. The task of comparing penalties to the offense, the court acknowledged, "involves judgments that courts find difficult, but it is not impossible." 347 Or at 63. The court drew on United States Supreme Court authority in that regard:

> "Comparisons can be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender. * * * [T]here are widely shared views as to the relative seriousness of crimes. For example, as the criminal laws make clear, nonviolent crimes are less serious than crimes marked by violence or the threat of violence.
>
> "There are other accepted principles that courts may apply in measuring the harm caused or threatened to the victim or society. The absolute magnitude of the crime may be relevant. Stealing a million dollars is viewed as more serious than stealing a hundred dollars—a point recognized in statutes distinguishing petty theft from grand theft. Few would dispute that a lesser included offense should not be punished more severely than the greater offense. Thus a court is justified in viewing assault with intent to murder as more serious than simple assault."

347 Or at 63 (quoting *Solem v. Helm*, 463 US 277, 292-93, 103 S Ct 3001, 77 L Ed 2d 637 (1983) (internal quotation marks omitted)).

The court then turned to the second factor bearing on proportionality: A comparison of penalties imposed for "other, related crimes." 347 Or at 63. It explained: "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." *Id.* Indeed,

"a standard that considers the offense and the penalty at issue in the context of related offenses and penalties provides a closer connection to the manner in which the substantive criminal laws and the sentencing statutes work together * * * than the purely abstract comparison of any single offense to the penalty for that offense."

*Id.* at 64-65. For example, Oregon has an "elaborate listing of sex offenses," and comparing the conduct constituting the crime and the penalty to other sex crimes is useful in determining proportionality. *Id.* at 65.

■ The court, however, was careful to limit the inquiry to "other crimes that have similar characteristics to the crime at issue." *Id.* The comparison of penalties for related crimes is not an invitation for courts to "roam freely through the criminal code, deciding which crimes are more or less serious than others." *Id.* at 64. Rather, according to the court, the legislature plays the "central role in determining which crimes are more or less serious," *id.*, and "a court would have difficulty comparing the relative seriousness or gravity of, say, forcible rape and first-degree robbery, or identity theft and harassment[.]" *Id.* at 65.

Third, the court examined the role of a defendant's criminal history in assessing proportionality. After reviewing its own precedent, the court explained that "a defendant's criminal history—including, necessarily, a defendant's lack of any criminal history—is relevant in determining whether a particular penalty is 'proportioned' to the offense." *Id.* at 67. For example, a penalty that might be proportional for a repeat offender (as in *Wheeler*, where the defendant was sentenced to life in prison for multiple felony sex offenses) would not necessarily be proportional for a first-time offender. *Id.*

In applying the methodology that it had identified to the facts before it, the court held that the trial court was correct in each of the consolidated cases in refusing to impose a statutory minimum sentence of 75 months' imprisonment on the defendant's conviction for first-degree sexual abuse. The Supreme Court relied heavily on the fact that the first-degree sexual abuse statute, ORS 163.427(1), criminalizes a broad range of conduct,

"including, but not limited to, momentary touching of an intimate part without the victim's awareness or knowledge, touching that the victim apprehends but does not appreciate as sexual, momentary touching over clothing, prolonged hand to genital contact, prolonged skin to skin genital contact, and, of course, forcing a person under 18 to engage in bestiality."

347 Or at 69 (internal quotation marks omitted). Because some of that criminalized conduct is especially harmful—the court used the example of a 50-year-old man forcing a 13-year-old girl to engage in prolonged skin-to-skin contact with him—a mandatory prison term of 75 months' imprisonment for first-degree sexual abuse does not, on the face of the statute, violate Article I, section 16. *Id.* "But because the statute also encompasses conduct that reasonable people would consider far less harmful, [the] defendants [were] entitled * * * to argue that the mandatory sentence, as applied to the particular facts of their cases, [was] unconstitutionally disproportionate." *Id.* at 69-70 (emphasis omitted).

The court, in sustaining the defendants' as-applied challenges, again focused on the range of conduct that constitutes first-degree sexual abuse:

"In determining whether the penalty here is unconstitutionally disproportionate, we cannot ignore the limited extent of the offenses—the physical touching—at issue here. There is no evidence that any touching between Rodriguez and the boy involved fondling, stroking, rubbing, or palpating. And the trial court, sitting as the factfinder in *Buck*, found that his contact with the girl did not involve fondling and was 'minimal.' The touchings were brief, if not momentary. There is no evidence of force or threats of any kind. The 'sexual' or 'intimate' body parts that were touched were clothed. There was no skin-to-skin contact, no genital contact, no penetration, no bodily injury or physical harm. In our view, comparing the statutory sentence of six years and three months in prison to the 'gravity' of the touching for which defendants were convicted suggests, preliminarily, that that penalty is not 'proportioned' to their offenses as required by Article I, section 16."

347 Or at 70-71 (footnote omitted). The court's conclusion in that regard was supported by a comparison of the defendants' conduct with other conduct that also could be prosecuted as

first-degree sexual abuse, particularly, bestiality or sexual contact accomplished through violence towards a victim, armed threats to accomplish sexual contact, or ripping off the victim's clothes to make sexual contact. The difference between defendants' conduct and that more harmful conduct—also punished by the same mandatory 75-month sentence as that imposed on the defendants—the court remarked, "is obvious to any reasonable person." *Id.* at 71.

After taking that "initial view" that the 75-month mandatory penalty for first-degree sexual abuse was unconstitutionally disproportionate, the court examined the second factor—penalties imposed for related crimes. In applying that factor, the court specifically limited its discussion to *other sex offenses*, explaining that "courts are ill-equipped to conduct an open-ended inquiry comparing the gravity of disparate crimes as part of a determination of whether the penalty for one of the crimes is disproportionate." *Id.* at 74. Three related offenses—second-degree sodomy, second-degree rape, and second-degree sexual penetration—were particularly significant to the court; those offenses involve some sexual penetration of the victim, yet each would yield the same 75-month sentence that the defendants received for sexual contact with clothed breasts (*Rodriguez*) and clothed buttocks (*Buck*). Focusing on the related crime of *second-degree sexual abuse*, the court summarized the proportionality problem in this way:

> "Here, in other words, is a sex crime that is closely related in terms of severity and description to first-degree sexual abuse and which, in practice, often is based on conduct that most people would consider far more serious than the conduct of Rodriguez and Buck. Nonetheless, the penalty for that crime is a fraction—incarceration for one twenty-fifth the time—of the penalty that Measure 11 would impose here. It is another indication that Measure 11 sentences in these cases would be disproportionate to the offense."

*Id.* at 76.

Lastly, the Supreme Court examined the criminal history of each defendant. Neither of the defendants had any prior convictions, and, in the absence of the mandatory

75-month sentences required under Measure 11, the presumptive sentence for first-degree sexual abuse under those circumstances would have been 16 to 18 months in prison. Even with a more serious criminal record of three or more person felonies, the defendants would have received presumptive sentences of 41 to 45 months in prison. Taking their criminal history into account, as well as the other two factors, the court held that the imposition of Measure 11 sentences would have been unconstitutional under the circumstances. *Id.* at 80.

In this case, defendant's proportionality argument has two components, both of which he asserts are supported by *Rodriguez/Buck*. First, he contends that, by imposing a 25-year term of imprisonment for first-degree rape, the legislature "made the mandatory minimum incarceration term the same as the incarceration term for the unclassified felony of intentional murder." *Compare* ORS 137.700(2)(a)(A) (providing a mandatory minimum of 300 months' imprisonment for murder conviction), *with* ORS 137.700(2)(b)(D) (providing the same mandatory minimum for rape conviction where victim is under the age of 12). According to defendant, once the terms of his post-prison supervision are considered—lifetime post-prison supervision with 10 years of active tracking—the penalty is actually harsher than that imposed for intentional murder. In his view, the fact that he received a harsher sentence for raping a child than had he committed an intentional murder "would shock the moral sense of all reasonable persons as to what is right and proper under the circumstances."[2] (Footnote and internal quotation marks omitted.)

Before reaching the specifics of defendant's contentions, both of which concern the second and third factors discussed in *Rodgriguez/Buck*, we begin our analysis by comparing the "penalty" that defendant received with his

---

[2] Defendant also suggests that there is a conflict in the statutes with respect to the applicable sentence for a first-degree rape conviction under ORS 163.375(1)(b). Under ORS 137.700(2)(a)(A), the crime carries a mandatory minimum sentence of 25 years' imprisonment, and yet the legislature never reclassified the crime as something other than a Class A felony. *See* ORS 161.605 (providing that the maximum term of an indeterminate sentence of imprisonment for a Class A felony is 20 years). Defendant does not develop that argument or explain why ORS 137.700(2)(a)(A), the later and more specific statute, should not control. *See Bobo v. Kulongoski*, 338 Or 111, 116, 107 P3d 18 (2005) (when two statutes conflict, the later, more specific statute controls). Accordingly, we do not address that argument further.

"offense." The penalty, as discussed above, is 25 years' imprisonment and lifetime post-prison supervision, the latter of which includes 10 years of active tracking. The "offense" in this case is the forcible rape of an 11-year-old child, which constitutes first-degree rape under ORS 163.375(1)(b). Unlike the first-degree sexual abuse statute at issue in *Rodriguez/Buck*, which criminalized a broad range of "sexual contact," first-degree rape encompasses far more specific conduct: "sexual intercourse" where the victim is (a) subject to forcible compulsion; (b) under 12 years of age; (c) under 16 years of age and the sibling, half-sibling, child, or stepchild of the defendant; or (d) incapable of consent by reason of mental defect, mental incapacity, or physical helplessness. ORS 163.375(1). The conduct for which defendant was convicted—forcible rape of an 11-year-old—is as grave as any listed in the statute, and defendant does not argue otherwise. Considering only the offense that defendant committed and the penalty that he received, we cannot conclude that his sentence "shocks the moral sense" of reasonable people.

We turn, then, to defendant's argument that his sentence is disproportionate in light of the penalties for other crimes. There are a number of problems with that argument, not the least of which is that he invites this court to do exactly what the Supreme Court cautioned against in *Rodriguez/Buck*—that is, he asks us to conduct an open-ended inquiry into the relative seriousness of unrelated criminal offenses. The legislature plays the central role in determining which crimes are more serious than others, and our review of the penalties for related crimes under Article I, section 16, is intended to allow us "to reach at least general conclusions about whether some related crimes are more serious than others." 347 Or at 74. More specifically, our role is not to reorganize the criminal code in a hierarchy of offenses, descending in gravity from murder. The courts, as the Supreme Court explained, are ill-equipped for that task, and it is the legislature—not the courts—who grapple with such questions as whether the individual harm and social consequences of raping a child are greater or the same as, for instance, a murder in the course of a botched robbery.

In any event, defendant's underlying premise is flawed: the penalty for first-degree rape is not harsher than the penalty for murder. Defendant narrowly focuses on the

mandatory minimum terms of incarceration for those crimes under ORS 137.700. The punishment for murder is, in fact, "imprisonment for life." ORS 163.115(5)(a). After the completion of a minimum period of confinement for 25 years, the convicted murderer is then entitled to a hearing to determine whether the prisoner is likely to be rehabilitated within a reasonable period of time. ORS 163.115(5)(c). Thus, even if a comparison to the penalty for the unrelated crime of murder were appropriate in this case, it would shed little light on whether defendant's 25-year sentence—when compared to life imprisonment for murder with the possibility of parole after 25 years—is proportionate.

Additionally, when defendant's penalty is compared to the penalties for truly related offenses, his proportionality argument crumbles. ORS 137.700 imposes similar 25-year mandatory minimum sentences for various sexual offenses committed against young children that, like rape, involve sexual penetration of the victim. For example, under ORS 137.700(2)(b)(E) and (F), the legislature has imposed 25-year mandatory minimum sentences for first-degree sodomy of a child under 12, ORS 163.405(1)(b), and first-degree unlawful sexual penetration of a child under 12, ORS 163.411(1)(b). In fact, the legislature has imposed the same 25-year sentence for first-degree kidnapping involving an *attempted* first-degree rape, sodomy, or unlawful sexual penetration of a child under 12. ORS 137.700(2)(b)(G). When considered in light of those related criminal statutes, the mandatory minimum sentence of 25 years is certainly proportional to the extraordinary gravity of first-degree rape of a child under 12—a violent sexual crime against a highly vulnerable victim. Nor are we persuaded that the term of lifetime post-prison supervision with 10 years of active monitoring, which similarly applies to first-degree sodomy and first-degree unlawful sexual penetration where the victims are under 12 years of age, renders the sentence constitutionally infirm. In our view, the term of post-prison supervision is a constitutionally permissible, proportionate response by the legislature to the seriousness of the offense and the vulnerability of the victim involved in this case.

Finally, defendant contends that his sentence is constitutionally disproportionate in light of the fact that he has

no prior criminal history and is amenable to treatment. The fact that defendant had no criminal history is of no relevance in this case. Although criminal history is one factor that could, along with the other factors, demonstrate that a penalty is disproportionate under the circumstances of a particular case, the lack of prior convictions alone has never been sufficient to render an otherwise constitutional penalty disproportionate under Article I, section 16. In this case, defendant committed a heinous act against an 11-year-old child; neither the absence of a prior criminal history, nor his amenability to treatment, makes his sentence such that it shocks the moral sense of reasonable people. We find nothing in *Rodriguez / Buck* or prior case law that suggests otherwise.

In sum, this is not the rare case in which the penalty imposed violates Article I, section 16. Defendant committed a grave offense and received a severe penalty. The Oregon Constitution does not prohibit that result.

In his second assignment of error, defendant contends that his sentence was disproportionate to his offense and cruel and unusual under the Eighth Amendment to the United States Constitution. The test for proportionality under the Eighth Amendment is similar to that under Article I, section 16, at least as to the comparison of the offense and the penalty,[3] and for the reasons discussed above, we reject defendant's argument under the federal constitution as well. Indeed, only a bare majority of the United States Supreme Court, in a five-four decision, was willing to say that child rape could not be a *capital offense*; given the vehemence of that debate, we cannot imagine that a 25-year sentence would violate the Eighth Amendment. *See Kennedy v. Louisiana*, 554 US ___ , 128 S Ct 2641, 171 L Ed 2d 525, *modified on denial of reh'g*, 554 US ___ , 129 S Ct 1, 171 L Ed 2d 932 (2008).

Affirmed.

---

[3] *See Rodriguez / Buck*, 347 Or at 59-60 (discussing different tests under Eighth Amendment to the United States Constitution and Article I, section 16, of the Oregon Constitution).