No. 85 February 12, 2025 701

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL JOSEPH BONCZKOWSKI,
aka Michael Jospeh Bonczkowski,
*Defendant-Appellant.*
Marion County Circuit Court
20CR33715; A178197

Donald D. Abar, Judge.

Argued and submitted February 21, 2024.

Zachary J. Stern argued the cause for appellant. Also on the brief was Zachary J. Stern, PC.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

### PAGÁN, J.

Defendant appeals from a judgment of conviction for sodomy in the first degree, raising four assignments of error. In his first assignment, defendant argues that the trial court erred by admitting evidence that he sexually abused the victim, J, on other occasions and was verbally and physically abusive to J and his family because it was not relevant under OEC 401. Alternatively, he argues that the trial court abused its discretion under OEC 403 by admitting the evidence. In his second assignment, defendant argues that the trial court erred by allowing the state to call several non-percipient witnesses to repeat J's out-of-court statements concerning both charged and uncharged conduct because that evidence bore no indicia of reliability. In his third assignment, defendant contends that the trial court plainly erred when it failed to intervene during the state's rebuttal argument, when the state referenced statements that prospective jurors made during *voir dire* concerning delayed reporting, introduced what defendant characterizes as "scientific evidence" regarding memories, and expressed a personal opinion that the victim was credible. Lastly, defendant's fourth assignment of error contends that the trial court erred by imposing a 300-month sentence. For the reasons that follow, we affirm.

### I.    FACTS

Defendant was the live-in boyfriend of J's mother. One evening, when J was 11 years old, defendant sexually assaulted J. J reported the abuse when he was 15 or 16 years old, and in 2020, defendant was charged with first-degree sodomy.

At trial, J testified that when he lived with defendant, J "really didn't like" defendant and that when he lived with defendant, he was "intimidated" and "afraid" of defendant because he was "a lot bigger" than J. J stated that he did not feel safe living with defendant because it "just sort of always felt like there was possible danger nearby."

The state also presented evidence through a forensic interviewer, who testified that J had told her that defendant sexually touched J on several occasions in multiple locations

throughout the house. The forensic interviewer also testified that J told her that defendant physically abused him, his siblings, and his mother during the time they lived together. And the forensic interviewer testified that J had said he "felt unsafe" around defendant and was afraid of him.

A nurse practitioner also testified that J told her about "two occasions" where defendant sexually abused him. One event consisted of non-penetrative conduct occurring in defendant's bedroom and the other involved penetrative conduct in J's bedroom.

J's guardian at the time of the trial also testified that J had told her that defendant had "grabbed [J] and told him that he would—he would show him, you know, teach him something, and tell him not to talk back. Then he said he took him in the—in a room and shut the door and abused him." She testified that J was "embarrassed and apprehensive" to tell her what happened.

## II.   ANALYSIS

### A.   *Other Acts Evidence*

In his first assignment of error, defendant argues that the trial court erred in admitting evidence that defendant (1) sexually abused J on other occasions; (2) physically abused J and his family members when they lived together; and (3) emotionally abused J and his family members when they lived together.

Before trial, defendant moved to exclude the other acts evidence, contending that it was "hearsay and not relevant." The state indicated that it intended to introduce the evidence to explain why J delayed disclosing the abuse. The trial court agreed with the state, ruling that the proffered evidence was not "abnormal or inadmissible" and the state is "always able to explain why there wasn't immediate reporting." On appeal, defendant argues that J's "fear" of defendant was not relevant under OEC 401 because J did not have an ongoing relationship with defendant because after the charged conduct, J returned to live with his guardian and did not have contact with defendant after removing his belongings.

As a preliminary matter, we review a trial court's determination of relevance under OEC 401 for errors of law. *State v. Stockton*, 310 Or App 116, 123, 483 P3d 657 (2021). We review a trial court's determination that other acts evidence is relevant and admissible under OEC 404(4) for legal error. *Id.* Whether otherwise admissible evidence should be excluded as unfairly prejudicial under OEC 403 is reviewed for abuse of discretion. *State v. Levasseur*, 309 Or App 745, 747, 483 P3d 1167, *adh'd to as modified on recons*, 312 Or App 733, 489 P3d 630, *rev den*, 368 Or 788 (2021). Our review is limited to the record before the trial court at the time it made its ruling. *State v. Travis*, 320 Or App 460, 461-62, 513 P3d 614 (2022).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. "The rule establishes a 'very low threshold' for the admission of evidence." *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (quoting *State v. Hampton*, 317 Or 251, 255 n 8, 855 P2d 621 (1993)). "Evidence is relevant so long as the inference desired by the proponent is reasonable, even if the evidence also could support a contradictory inference." *Id.*

OEC 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." Generally, we "defer to the trial court's decision regarding whether the probative value of the evidence is substantially outweighed by the potential for prejudice." *State v. Sewell*, 257 Or App 462, 468, 307 P3d 464, *rev den*, 354 Or 389 (2013) (internal quotation marks omitted). An abuse of discretion occurs when a court exercises its discretion to an end that is not justified by evidence and reason. *Id.* at 469.

Oregon courts have permitted the admission of an accused's uncharged misconduct of which the victim is aware for the purpose of showing the victim's state of mind. *See State v. Hall*, 108 Or App 12, 17, 814 P2d 172, *rev den*, 312 Or 151 (1991) (explaining that "[a] victim's relationship to

the accused is relevant to explain her conduct"). Previously, such evidence has been admitted to show the victim's fear of the defendant, thereby explaining the victim's behavior. *See, e.g.*, *State v. Panduro*, 224 Or App 180, 188-89, 197 P3d 1111 (2008) (the defendant's uncharged acts toward the sexual abuse victim were admitted to show the victim's fear of the defendant and hence the reason for her delayed reporting of the abuse); *State v. Zybach*, 308 Or 96, 99-100, 775 P2d 318 (1989) (evidence offered to show why a victim delayed in reporting incidents of sexual abuse is relevant for a non-character purpose).

In this case, the trial court did not err in determining that evidence that defendant was verbally and physically abusive toward the victim and his family was relevant under OEC 401. First, the evidence was probative to explain J's delay in disclosing the abuse. The charged offense involved defendant's sexual assault of J at a time when J was living with his mother and defendant. At that time, defendant was verbally abusive to J, treated him unfairly, and, as J testified, was "intimidating" to him. J stated that he did not tell anyone about what happened because "it doesn't happen to people," and was "abnormal," but that he ultimately disclosed the abuse because he wanted to talk about it and to get help "dealing with [his] issues." He told the forensic interviewer that he was afraid of defendant and felt unsafe living with him. Thus, even though J did not expressly testify *at trial* that he delayed reporting due to his fear of defendant, given the above context, the evidence was still relevant to explain J's delay in reporting the abuse for several years.

In the alternative, defendant argues that even if the evidence was relevant under OEC 401, the state had no "need" for the evidence and the risk of unfair prejudice outweighed any probative value, and the trial court therefore abused its discretion under OEC 403.[1] Defendant also argues that the court erred by not properly conducting OEC 403

---

[1] OEC 403 provides, in pertinent part:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

balancing.[2] However, defendant never raised an objection under OEC 403. Rather, his objection was based on claims that the contested evidence was hearsay and not relevant. He never argued that the evidence was prejudicial, much less unfairly prejudicial in light of its probative value. Thus, his arguments premised on OEC 403 are unpreserved.

In *State v. Woods*, 284 Or App 559, 393 P3d 1188, *rev den*, 361 Or 801 (2017), the defendant argued that the trial court erred by admitting evidence of prior sexual misconduct, contending that the probative value of the evidence was substantially outweighed by the prejudicial effect under OEC 403. *Id.* at 563. The defendant further argued that the trial court was required to engage in OEC 403 balancing under *State v. Williams*, 357 Or 1, 18, 346 P3d 455 (2015), in order to protect the defendant's due process rights under the Fourteenth Amendment. *Id.* at 563-64; *see also Williams*, 357 Or at 18-19 (holding that OEC 403 balancing "is required by the Due Process Clause"). However, we rejected both arguments because "[the] defendant neither requested OEC 403 balancing nor argued that due process required it below, [and] we will not consider those arguments for the first time on appeal." *Woods*, 284 Or App at 564.

Further, we have consistently rejected unpreserved OEC 403 arguments since *Woods*. *See State v. Louden*, 284 Or App 611, 612, 391 P3d 913 (2017) (rejecting the defendant's OEC 403 and due process arguments because they were unpreserved); *State v. Hagner*, 284 Or App 711, 722, 395 P3d 58, *rev den*, 361 Or 800 (2017) (refusing to review the defendant's OEC 403 argument for the first time on appeal, and collecting cases establishing that a trial court's failure to conduct unrequested OEC 403 balancing is not plain error). Thus, consistent with our decisions in *Woods*,

---

[2] Defendant focuses his argument on prejudice under OEC 403. At trial and in the briefing, OEC 404(3) was discussed. In light of *State v. Davis*, 372 Or 618, 642-43, 553 P3d 1017 (2024), we note that OEC 404(4) was the appropriate rule under which to offer and receive such evidence but that the prejudice analysis under OEC 403, as argued by appellant, is applicable. *See Davis*, 372 Or at 642-43 (explaining that "OEC 404(4) and OEC 404(3) operate, in conjunction, to authorize a permissible range of discretion to admit other acts evidence of a defendant, in a criminal trial, when character is present in some degree that is less than the primary or substantial source of relevance").

*Louden*, and *Hagner*, we do not consider defendant's unpreserved OEC 403 claim of error.[3]

## B.   *Hearsay Evidence*

In his second assignment of error, defendant contends that the court erred by allowing the state to call four non-percipient witnesses to repeat the victim's out-of-court statements concerning both charged and uncharged conduct. Specifically, defendant argues that the trial court erred when it allowed the state to offer child hearsay evidence that bore "no indicia of reliability."[4]

OEC 803(18a)(b) provides, in part, that an out-of-court statement by a person about "an act of abuse" is admissible "if the declarant *** testifies at the proceeding and is subject to cross-examination." Alternatively, such statements are admissible if the declarant is "unavailable as a witness," the declarant was "chronologically or mentally" under a certain age when making the statements, and the party seeking admission can show that certain conditions are met, including that the statements have sufficient "indicia of reliability." *Id.* By way of analogy, there are two "doors" for admission of statements under OEC 803(18a)(b). *State v. Lobo*, 261 Or App 741, 753, 322 P3d 573, *rev den*, 355 Or 880 (2014).

Here, as defendant acknowledges, J testified at trial and was available for cross-examination. His statements met the prerequisites for admission under OEC 803(18a)(b) and were accordingly admissible under the first "door" of OEC 803(18a)(b). The trial court, therefore, was not required to determine whether the statements bore indicia of reliability before admitting them, as required for admission under the second "door." The trial court did not err.

---

[3] Defendant does not request plain-error review and we decline to engage in that analysis. *See State v. Bigelow*, 238 Or App 344, 348, 242 P3d 719 (2010), *rev den*, 350 Or 130 (2011) (stating that the court would not address whether trial court plainly erred where appellant had not attempted to demonstrate requirements for plain error review were met).

[4] Defendant's second assignment of error also argues—briefly—that the trial court erred by not assessing the relevance of the child hearsay statements and whether any reliably relevant statement was more probative than prejudicial. Defendant also contends that some of the statements were cumulative of other evidence. However, defendant failed to preserve those arguments, and does not argue any error was plain, so we do not address them on appeal.

C.  *Prosecutor's Statements*

In his third assignment, defendant raises an unpreserved challenge to several statements made by the prosecutor during rebuttal closing argument. Defendant contends that the trial court plainly erred when it failed to intervene, *sua sponte*, when the state (1) referenced statements that prospective jurors made during *voir dire* concerning delayed reporting, (2) introduced what defendant characterizes as "scientific evidence" regarding memories, and (3) expressed a personal opinion that the victim was credible. Defendant contends that those arguments improperly referenced extrarecord facts and undermined the fairness of defendant's trial, and that under *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), the trial court erred when it failed to intervene.

Unpreserved error relating to improper arguments made by a prosecutor in closing argument will be considered "legal error," for purposes of plain-error review, "where it would have been an abuse of discretion for the trial court to have denied a motion for mistrial" had one been made, *i.e.*, where "it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied [the] defendant a fair trial." *State v. Settlemier*, 333 Or App 179, 180, 551 P3d 995 (2024); *Chitwood*, 370 at 313-14 (explaining that, "to establish legal error, a defendant who seeks review of an unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived the defendant of a fair trial.").

Lawyers, like witnesses, are "prohibited from giving their personal opinions on the credibility of witnesses." *State v. Sperou*, 365 Or 121, 129, 442 P3d 581 (2019) ("It is improper for counsel to interject his personal appraisal of the witness's credibility in a way which would suggest to the jury that the appraisal is based upon counsel's own knowledge of facts not introduced into evidence." (Citations omitted)). As advocates for the state's cause, prosecutors "have wide latitude to make arguments from the evidence" but they may not reference facts not in evidence to argue that they believe a witness is truthful. *Id.* at 130. However, when a defendant seeks appellate reversal based on an improper argument and appellant did not preserve their argument,

"it is not enough for a defendant to show that [the] prosecutor's comments were improper[.]" *Chitwood*, 370 Or at 312. Instead, as indicated above, improper argument warrants reversal on appeal only when the argument is "so prejudicial as to have denied [the] defendant a fair trial." *Id.*

Applying that standard in the context of this case, we conclude that the prosecutor's reference to juror statements about delayed reporting during *voir dire* do not warrant reversal on appeal. In relevant part, during the state's rebuttal closing argument, the prosecutor argued:

> "What else do you know that gives you confidence in what [J] says is true besides the surrounding circumstances about how he told us about what happened, how it ever came out at all? Because as you know from *voir dire* and from your own personal experience, many, many people never tell about this kind of abuse or they don't tell for decades.

> "We know that [J's] telling the truth because of some of the things he didn't tell us. When he was on the stand and I asked him things like, you know, I think I asked him what were you wearing for instance and he doesn't remember. You know, where did you – where were your hands and he doesn't remember. I asked him how did you get from the bedroom to the living room and he's not able to give exact details.

> "A person who's lying, they're gonna give me those details, right? A person who's making up the story isn't gonna say I don't remember those parts; they're gonna fill in those parts.

> "A person who is recollecting a traumatic event is gonna have some [holes] in their memory because that's real memory. Real memory lacks detail."

For the following reasons, we conclude that the statements identified by defendant do not require reversal.

As an initial matter, we note that during its case-in-chief, the state presented evidence regarding delayed disclosure of abuse through a forensic interviewer. The forensic interviewer testified that children do not always disclose abuse the same way each time they talk about it, and that delayed disclosure is a common experience. She testified that many factors come into play with regard to delayed

disclosure, such as the age of the child and the relationship that the child had with the person of concern. The prosecutor could fairly refer the jury back to that testimony during her closing argument, which we understand her to have done here. And as defendant noted during his closing argument, the jury was properly instructed that it could draw inferences and make conclusions from the evidence based on their common sense and experience. *See State v. Hines*, 84 Or App 681, 684 n 2, 735 P2d 618, *rev den*, 303 Or 590 (1987) ("So long as [the jury is] correctly instructed that a finding of guilty cannot be made on less than proof beyond a reasonable doubt, it cannot be error to also instruct them that they may use their powers to reason and common sense" and may draw reasonable inferences from the evidence.).

Second, the prosecutor did not introduce "scientific evidence" when she made demeanor-based arguments to the jury that it should find the victim credible. The prosecutor's point was to rebut defendant's argument that J's statements were not credible because he would have come forward earlier if he was telling the truth. In order to do so, the prosecutor focused on how J testified, his demeanor, and how he answered questions. These facts were known to the jury, who had witnessed J's testimony, and were not based on evidence outside the record.

Further, the prosecutor's argument did make it clear that she believed the victim's report of defendant's assault. However, as the Supreme Court has explained, "when a lawyer presents a witness and argues to the jury that it should find facts in accordance with that witness's testimony, the jury may infer that the lawyer believes the witness. That circumstance, which is usually present, *** is permissible." *State v. Charboneau*, 323 Or 38, 48, 913 P2d 308 (1996). Thus, we do not think the prosecutor's comments were improper.

Finally, even if the prosecutor's challenged comments were improper, they did not rise to the level of prejudice that "as a practical matter, the bell once rung, cannot be unrung[.]" *State v. Jones*, 279 Or 55, 62, 566 P2d 867 (1977) (internal quotation marks omitted); *cf. State v. Muniz*, 332 Or App 56, 63, 585 P3d 172 (2024). If defendant had

objected, the prosecutor could have clarified that she was asking the jury to rely on the evidence presented at trial or the trial court could have provided a curative instruction to the same effect. In either case, any potential impropriety could have been cured. For those reasons, we reject the third assignment of error.

D.   *Proportionality of Sentence*

Finally, defendant's fourth assignment of error raises a proportionality challenge based on Article I, section 16, of the Oregon Constitution, and *State v. Rodriguez/Buck*, 347 Or 46, 217 P3d 659 (2009). Defendant contends that that the trial court improperly imposed a 300-month sentence on defendant's conviction for first-degree sodomy because the court "erroneous[ly] belie[ved] that it lacked authority to even consider an as-applied challenge to a statute that carries a mandatory minimum sentence." In support of that assertion, he notes that the court, in the course of imposing the prescribed sentence, responded to defendant's argument that the sentence was disproportionate by stating on the record, "I feel bound to the case law now and so the court it doesn't have any discretion in the matter."

Article I, section 16, as construed in *Rodriguez/Buck*, authorizes a sentencing court to impose a sentence that is less than the statutorily mandated sentence if the court finds that the mandated sentence, either on its face or as applied, is an unconstitutionally disproportionate punishment. *See Rodriguez/Buck*, 347 Or at 78-79 (holding that a 75-month sentence for first-degree sexual abuse offense was unconstitutionally disproportionate under the specific circumstances at issue). However, because the role of courts is not to "second-guess" the penalties enacted by the legislature, we will determine that a sentence is disproportionate only in rare circumstances. *Id.* at 58. The application of a legislatively specified penalty violates the proportionality clause of Article I, section 16, if the penalty "is so disproportionate, when compared to the offense, so as to 'shock the moral sense' of reasonable people." *Id.*

Here, defendant does not argue that this record provides a factual or legal basis for the sentencing court to have

invoked authority under Article I, section 16, to invalidate the statutorily prescribed sentence as unconstitutionally disproportionate. Instead, defendant contends that the court erred because the court declined to consider defendant's constitutional challenges under the erroneous assumption that it "didn't have any discretion in the matter."

However, we find defendant's argument to be a mischaracterization of the statements that the court made on the record. Specifically, the court stated at sentencing:

"I would note for purposes of appeal that, [defense counsel], the argument you're making that this is a single event and with no prior sexual conduct *** that your basis for Rodriguez, I think it is, that it's unconstitutional because it's a disparate sentence.

"I feel bound to the case law now and so the court it doesn't have any discretion in the matter.

"So it will be a 300-month sentence to department of corrections without 137.750, 751, and 421.508(4) considerations. Lifetime postprison supervision with a buccal sample, sex offender registration.

"I will waive all financials. No ability to pay.

"That is the sentence and the court feels bound under the law to do that. If the legislature were to give the court discretion on these, otherwise, you're asking me to make a constitutional decision, which I don't feel that I can *under the rules that we have now or the case law*. So that's a question for a higher court."
(Emphasis added.)

Rather than indicating that the court did not know that it had discretion to consider defendant's proportionality challenge, the court's statements instead demonstrate that it understood that, in certain circumstances, *Rodriguez/Buck* could be applied to invalidate a statutorily prescribed sentence. However, a sentencing court has only limited authority under Article I, section 16, to not impose a statutorily mandated sentence and may only do so if it first determines that the mandated sentence is, for some reason, *unconstitutionally disproportionate punishment*. And here, defendant argued only that his sentence was disproportionate because

the case involved a single incident and he had no prior sexual misconduct history. Given the seriousness of the offense and defendant's unpersuasive argument in support of why his statutorily prescribed sentence was disproportionate, it follows that the court did not err in concluding that in did not have "discretion * * * in terms of what the sentence would be."

Further, since the *Rodriguez/Buck* decision, we have previously upheld similar sentences imposed pursuant to ORS 137.700 against such "as applied" challenges. *See State v. Alwinger*, 236 Or App 240, 246-47, 236 P3d 755 (2010) (upholding 300-month sentence for sexual penetration of a child under 12 when the offender had no criminal history); *State v. Shaw*, 233 Or App 427, 437, 225 P3d 855, *rev den*, 348 Or 415 (2010) (same). In short, we disagree with defendant that the trial court erred when it declined to consider the constitutional proportionality challenges to defendant's sentence.

Affirmed.