No. 463		May 29, 2025		749

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TYGER LEERAY PEARSON,
*Defendant-Appellant.*

Lincoln County Circuit Court
21CR60376; A181601

Sheryl Bachart, Judge.

Argued and submitted March 18, 2025.

Ryan Scott argued the cause and filed the briefs for appellant.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for second-degree assault and unauthorized use of a vehicle.[1] In three assignments of error, defendant argues that the trial court erred by admitting evidence that defendant was in a prior altercation roughly three months before the incident in this case. Defendant contends that, because he acted in self-defense in that prior altercation, evidence of the altercation was not relevant under OEC 401. Alternatively, defendant argues that even if the evidence was relevant, the trial court abused its discretion under OEC 403 by admitting the evidence. As explained below, we conclude that the trial court correctly admitted the evidence under OEC 401. We further conclude that defendant's OEC 403 argument is unpreserved, and we decline to address it as plain error. Accordingly, we affirm.

We begin with a recitation of the facts and the parties' arguments as they relate to the admissibility of the evidence of the prior altercation. The state presented evidence that M, a cab driver, received a call to pick up defendant at a residence. Defendant, who had consumed alcohol and cocaine that evening, got into the cab and asked M to take him to a bar where defendant's truck was parked. Defendant passed out in the cab on the way to the bar. When they got to the bar, M told defendant that they had arrived. Defendant woke up and said, "I'll fuck you up" several times to M, who got out of the car, opened defendant's door, and stepped back to allow defendant to exit. Video surveillance footage showed defendant step out of the car and immediately start punching M in the head. M tried to defend himself, and defendant continued to hit him, causing M to fall to the ground. Defendant fell on top of M and repeatedly punched him in the head while M lay motionless on the pavement. Defendant then got into M's cab, drove away, and abandoned the cab about a block from his home.

Police contacted defendant at his home several hours after the assault. Defendant initially denied being in an altercation but eventually claimed that he had fought

_____

[1] The jury also found defendant guilty of third-degree assault. The trial court merged that verdict into the verdict on the second-degree assault charge.

back in self-defense after the cab driver "sucker punch[ed]" him. The state charged defendant with multiple offenses, including second- and third-degree assault.

At trial, defendant raised the affirmative defense of guilty except for insanity (GEI), claiming that he committed the assault while in a post-seizure delirium and thus did not have the substantial capacity to appreciate the criminality of his conduct and did not possess the substantial capacity to conform his conduct to the requirements of the law. *See* ORS 161.295(1) ("A person is guilty except for insanity if, as a result of a qualifying mental disorder at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of the law."). One of defendant's experts, Dr. Millkey, testified that he did not believe that defendant was malingering (lying about his symptoms) because, among other factors, defendant lacked a known history of "illegal, violent behavior" and, thus, "in the absence of a violent history," the assaultive behavior was "out of character" with defendant's personality.

Defendant testified at trial. On cross-examination, the prosecutor asked defendant if he had "[b]een in fights before." Defense counsel objected, and the trial court excused the jury to address the objection. Defense counsel explained that defendant had been charged in another jurisdiction for an incident that occurred prior to this incident but that had been "filed much later," and he did not think it was "relevant to this particular incident." The state responded that defendant opened the door to the line of questioning because Millkey had testified that, in assessing whether defendant was malingering, he considered that defendant's assaultive behavior was out of character. Defense counsel responded that at the time defendant was evaluated by Millkey, he had not been charged in relation to the prior incident and thus "he was not being untruthful in not relaying criminal history" to Millkey. Defense counsel argued that "it's totally irrelevant what happened in [the prior 2021 incident] that hasn't been charged until 2022 and hasn't even gone to trial or been adjudicated at this particular time." The prosecutor said she would not ask defendant if he has been charged but

that she "want[ed] to be able to cross him on \*\*\* the fight that happened."

The trial court ruled that evidence of the prior altercation was admissible because it was relevant to contradict Millkey's testimony that defendant's assaultive behavior was out of character. The trial court rejected defendant's argument that only criminal history would be relevant, explaining that "[i]t's the conduct, not the criminal charge that's [relevant] and probative in [Millkey] forming his opinion" and that, under OEC 404, evidence of "prior uncharged conduct" is admissible for impeachment purposes.

The trial court conducted balancing under OEC 403 and concluded that the probative value of the evidence was "very high" because the jury had to determine whether defendant's GEI defense applied, and whether defendant committed a prior assault a few months prior to this incident was "probative on the foundation of [Millkey's] testimony." The court concluded that the evidence was "admissible under 404" and, because the probative value was "very high in this case," it was not substantially outweighed by the risk of unfair prejudice. The trial court clarified that it was "the conduct itself that is relevant and admissible, not the fact that a criminal charge is pending."

The trial court brought the jury back in and the prosecutor again asked defendant if he had been in any fights before the incident with M. Defendant said that he had, and the prosecutor asked if one of those fights "specifically occurred in Astoria, Oregon," about two and a half months before the incident with M. Defendant replied, "Yes." Defendant testified that he was drinking at a bar that night. The prosecutor asked, "And on that night you got into a fight with an individual named \*\*\* Hall[?]" Defendant replied, "I wouldn't call it much of a fight. But yes."

The prosecutor then asked defendant, "Isn't it true that he reported that you followed him out of the bar, started swinging, attacked him, and he actually ultimately broke his ankle?" Defense counsel objected on hearsay grounds, and the trial court overruled the objection. The prosecutor repeated the question, and defense counsel objected on

confrontation clause grounds. The trial court overruled the objection. In response to the prosecutor's question, defendant said, "I would say that's incorrect."

The prosecutor continued to question defendant about the fight, asking, "Isn't it true that you climbed on top of him and started punching him," and that "you punched him in the eye?" Defendant said that was not true. The prosecutor asked defendant what he recalled about the fight, and defendant testified that Hall, "who was about six-four, three hundred pounds," made racist comments to defendant and his friends and shoved one of defendant's friends. Defendant and a friend went outside, Hall followed them, and defendant asked Hall why he was bothering them. Hall "took a swing" at defendant, and defendant defended himself, saying that he "grabbed [Hall's] leg and we stepped back. [Hall] fell off a curb."

The prosecutor asked defendant if he understood that "Hall has a very different version of events of how he was assaulted ***." Defense counsel objected, arguing that "[i]t's irrelevant what [Hall's] beliefs are." The trial court overruled the objection, and in response to the question, defendant said "I have no idea what [Hall] thinks of the incident." The prosecutor asked defendant if he had seen the police reports from the incident, and defense counsel objected on relevancy and hearsay grounds. The trial court overruled the objection because the "question as to whether he's seen the police reports is not hearsay." Defendant answered that he had not seen the police reports.

The trial court excused the jury again to address defendant's objections to the line of questioning. Defendant argued that, in asking about the police report, the prosecutor was trying to elicit testimony about charges being filed despite the court's earlier ruling that evidence about criminal charges was not admissible. The prosecutor responded that she wanted to ask defendant additional questions about the prior incident and defendant's statements to police about the incident, but that she would "not talk about the fact that there is a pending case."

The trial court brought the jury back, and the prosecutor continued to cross-examine defendant about the fight, including asking him whether he was "aware that [Hall] was

injured \* \* \* after the fight." Defense counsel objected on the grounds that it called for speculation and lacked a foundation. The trial court overruled the objection, stating that defendant "can testify as to what he knew or didn't know." Defendant said that he did not know whether Hall was injured in the fight. The prosecutor asked defendant if he recalled having a seizure prior to the altercation in Astoria, and defendant replied that he did not recall having a seizure.

Outside of the presence of the jury, the trial court subsequently revisited its ruling on the admissibility of the evidence of the prior altercation to further "develop the record." The trial court noted that the GEI defense that defendant raised—that he assaulted M involuntarily because defendant was in a post-seizure delirium—relied on Millkey's testimony, which included Millkey's determination that there was no evidence of malingering, in part because defendant did not have a "known history of illegal, violent behavior." The trial court found that defendant "put his character at issue" and that evidence of the prior fight was admissible to impeach Millkey's testimony.[2] The trial court stated that it would instruct the jury that questions posed by attorneys are not evidence.

The trial court called the jury in and gave the following instruction:

> "Defendant, when he was testifying, was asked questions about statements by others regarding a prior incident. I want to remind you about the instruction that I gave you at the beginning of the trial that questions asked by attorneys are not evidence. Okay? So the only thing that is evidence for you to consider is the witness's response to the questions. But if \* \* \* there's a lot of information being given by an attorney's question, that is not evidence. Okay? The evidence is in the response of the witness, not the information that was contained within a question."

A jury found defendant guilty of second- and third-degree assault and unauthorized use of a vehicle.

On appeal, defendant argues that the trial court erred in admitting evidence of (1) the prior altercation; (2) whether defendant knew that Hall had a different version

---

[2] We note that, although the trial court appears to have relied on OEC 405 (methods of proving character) and OEC 404 (evidence of other crimes, wrongs or acts) in its ruling, defendant does not raise those rules in his arguments on appeal.

of the altercation with defendant; and (3) whether defendant knew that Hall was injured in the altercation. He argues that that evidence was irrelevant. Alternatively, he argues that the prejudicial effect of the evidence "and the way it was elicited" substantially outweighed its probative value.

The state responds that defendant's arguments are not preserved and that the trial court did not err, plainly or otherwise, in admitting the evidence because the evidence was relevant for impeachment purposes and the risk of unfair prejudice did not substantially outweigh its probative value.

We review the trial court's determination of relevance under OEC 401 for errors of law. *State v. Bonczkowski*, 337 Or App 701, 705, 564 P3d 481 (2025). Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." That rule sets a very low threshold for the admission of evidence. *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999) ("[E]vidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action.").

Under OEC 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice * * *." Generally, we "defer to the trial court's decision regarding whether the probative value of the evidence is substantially outweighed by the potential for prejudice." *Bonczkowski*, 337 Or App at 705 (internal quotation marks omitted).

We begin with defendant's relevancy argument.[3] In defendant's view, acting in self-defense is not "illegal, violent

_____

[3] The state argues that defendant did not preserve his relevancy argument because he did not specifically argue below that an act of self-defense was not relevant. We conclude that the argument is preserved. Defendant objected on relevancy grounds and argued that the prior incident was not relevant because it was not evidence of "criminal history." That argument—as demonstrated by the arguments that the state made below and the trial court's analysis— adequately alerted the opposing party and the trial court to the issue on appeal, namely whether the prior incident was relevant to rebut Millkey's opinion that defendant was not malingering. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (identifying underlying policies of preservation, including efficient judicial administration and fairness to the parties).

behavior," and thus evidence of the prior altercation is not relevant because Millkey's conclusion that defendant was not malingering relied on an absence of any history of only "illegal, violent behavior." We disagree. Although Millkey testified that he considered whether defendant had a history of "illegal, violent behavior," he also referenced the "absence of a violent history" more generally, and Millkey's inquiry was broadly whether defendant's assault was out of character with his personality.

In light of that testimony, evidence that defendant was in a prior physical altercation roughly three months before the incident in this case—notwithstanding whether he acted in self-defense or whether his conduct was "illegal"—allowed a reasonable inference that defendant's assault committed against M was not "out of character." *See id.* ("Evidence is relevant so long as the inference desired by the proponent is reasonable, even if the evidence also could support a contradictory inference." (Internal quotation marks omitted.)). And that inference was relevant to a key issue at trial—namely, the validity of defendant's GEI defense.

We further disagree with defendant's contention that his knowledge about Hall's version of events or whether Hall was injured was not relevant. As discussed above, the trial court correctly concluded that evidence of the prior altercation was relevant. The prosecutor's questions about that altercation—including whether defendant knew that Hall disputed his version of events or that Hall was injured— were within the scope of the evidence that the trial court ruled was relevant. Defendant's answers to those questions bore on defendant's credibility on the issue and on the nature of the altercation—particularly the level of violence that it involved.[4]

We turn to defendant's argument that, even if the evidence was relevant under OEC 401, the trial court abused its discretion in admitting the evidence because, under OEC 403, the risk of unfair prejudice outweighed any probative

---

[4] Defendant further argues that the prosecutor's questions were a "backdoor attempt to invite the jury to speculate that defendant had—contrary to the actual evidence in the record—been engaged in illegal, violent behavior." That argument is not preserved and thus we do not address it.

value. We conclude that that argument is not preserved. Although defendant objected to the evidence on various grounds, including relevance, hearsay, and the confrontation clause, defendant never argued that the evidence was too unfairly prejudicial compared to its probative value.

Defendant alternatively requests plain error review, stating that the requirements of plain error review are met. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (stating requirements for plain error review). Defendant has not developed any argument, however, as to why any error here would qualify as "plain" or why, assuming that any error is plain, we should exercise our discretion to correct that error. *See id.* at 630 (whether to correct a plain error is a matter of discretion). Accordingly, we do not consider defendant's unpreserved OEC 403 claim of error. *See Bonczkowski*, 337 Or App at 707-08 (rejecting the defendant's unpreserved OEC 403 argument); *State v. Waldron*, 298 Or App 180, 185, 445 P3d 391 (2019) (declining to review the defendant's unpreserved claim of error where the defendant did not develop any argument as to why we should exercise our discretion to correct the error).

In sum, we conclude that the trial court did not err in admitting evidence of the prior altercation because that evidence was relevant under OEC 401, and we decline to address defendant's unpreserved argument that the trial court erred under OEC 403.

Affirmed.